# United States Court of Appeals for the Federal Circuit

2008-1532

ARCTIC SLOPE NATIVE ASSOCIATION, LTD.,

Appellant,

v.

Kathleen Sebelius, SECRETARY OF HEALTH AND HUMAN SERVICES,

Appellee.

- - - - - - - - - - - - - - - - - - - - -

2008-1607, 2009-1004

CONFEDERATED TRIBES OF COOS, LOWER UMPQUA,
and SIUSLAW INDIANS,

Appellant,

v.

Kathleen Sebelius, SECRETARY OF HEALTH AND HUMAN SERVICES,

Appellee.

- - - - - - - - - - - - - - - - - - - - -

METLAKATLA INDIAN COMMUNITY,

Appellant,

v.

Kathleen Sebelius, SECRETARY OF HEALTH AND HUMAN SERVICES,

Appellee.

Lloyd B. Miller, Sonosky, Chambers, Sachse, Miller & Munson, LLP, of Anchorage, Alaska, argued for appellant in 2008-1532. With him on the brief were Hilary V. Martin; and Donald J. Simon and Arthur Lazarus, Jr., of Washington, DC.

Geoffrey D. Strommer, Hobbs, Straus, Dean & Walker, LLP, of Portland, Oregon, argued for all appellants in 2008-1607, 2009-1004. With him on the brief were Stephen D. Osborne; and Marsha K. Schmidt, of Washington, DC.

Robert E. Chandler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were Michael F. Hertz, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Donald E. Kinner, Assistant Director. Of counsel on the brief for 2008-1607, 2009-1004 were Jay Furtick, Assistant Regional Counsel, and Melissa Jamison, Senior Attorney, Office of the General Counsel, United States Department of Health and Human Services, of Washington, DC.

Michael P. Gross, M.P. Gross Law Firm, P.C., of Santa Fe, New Mexico, for amicus curiae National Congress of American Indians. Of counsel on the brief was Daniel H. MacMeekin, of Washington, DC.

Appealed from: Civilian Board of Contract Appeals

Administrative Judge Candida S. Steel

# United States Court of Appeals for the Federal Circuit

2008-1532

ARCTIC SLOPE NATIVE ASSOCIATION, LTD.,

Appellant,

v.

Kathleen Sebelius, SECRETARY OF HEALTH AND HUMAN SERVICES,

Appellee.

Appeal from the Civilian Board of Contract Appeals in case nos. 190-ISDA and 289-ISDA through 293-ISDA, Administrative Judge Candida S. Steel.

-------------------------------------------------------------------------------------

2008-1607, 2009-1004

CONFEDERATED TRIBES OF COOS, LOWER UMPQUA,
and SIUSLAW INDIANS,

Appellant,

v.

Kathleen Sebelius, SECRETARY OF HEALTH AND HUMAN SERVICES,

Appellee.

------------------------------------------------

METLAKATLA INDIAN COMMUNITY

Appellant,

v.

Kathleen Sebelius, SECRETARY OF HEALTH AND HUMAN SERVICES,

Appellee.

Appeals from the Civilian Board of Contract Appeals in case nos. 235-ISDA, 236-ISDA, 280-ISDA, and 281-ISDA, Administrative Judge Candida S. Steel.

_____

DECIDED:  September 29, 2009

_____

Before MAYER, LOURIE, and BRYSON, Circuit Judges.

BRYSON, Circuit Judge.

The appellants in these three appeals are Indian tribes and tribal organizations that provide health care services to their members under contracts with the Indian Health Service ("IHS").  The contracts were entered into pursuant to the Indian Self-Determination and Education Assistance Act ("ISDA"), 25 U.S.C. §§ 450-450n.  The Civilian Board of Contract Appeals dismissed several of the appellants' contract claims against the IHS on the ground that the appellants had failed to present those claims to a contracting officer within six years after the claims accrued, as required by section 605(a) the Contract Disputes Act ("CDA"), 41 U.S.C. § 605(a).

Before the Board of Contract Appeals, the appellants argued that the CDA's six-year presentment period was tolled on either of two grounds.  First, they argued that the statutory presentment period was subject to equitable tolling.  Second, they argued that the period was legally tolled by the pendency of two class action lawsuits in which they were putative class members.  The Board rejected both arguments.  It held that the CDA's presentment period is a jurisdictional requirement that is not subject to tolling, either equitable or legal.  We hold that the six-year presentment period is subject to equitable tolling, but not class action tolling; we remand to the Board to determine whether this case satisfies the requirements of the equitable tolling doctrine.

I

The ISDA was enacted in 1975 to promote tribal autonomy by permitting Indian tribes to manage federally funded services that were previously administered by the federal government. See 25 U.S.C § 450a; Cherokee Nation of Okla. v. Leavitt, 543 U.S. 631, 634 (2005). Transfers of federal programs to tribal control under the ISDA are accomplished through "self-determination contracts" under which a tribe agrees to take over administration of a federal program such as an IHS hospital or clinic. 25 U.S.C. § 450f(a). The government is required to provide self-determination contractors with the same amount of funding that would have been appropriated for the tribal programs if the government had continued to operate the programs directly. Id. § 450j-1(a)(1).

As originally enacted, the ISDA did not require the government to pay the administrative costs that the tribes incurred to operate the programs. In many cases, contractors were forced to absorb those costs, thereby reducing the funds available for the tribes to provide direct services to their members. See Thompson v. Cherokee Nation of Okla., 334 F.3d 1075, 1080 (Fed. Cir. 2003); S. Rep. No. 100-274, at 8-9 (1987). To remedy that problem, Congress amended the ISDA in 1988 to require the federal government to provide funds to pay the administrative expenses of covered programs. Those expenses included "contract support costs," defined in the statute as costs that a federal agency would not have directly incurred, but that tribal organizations acting as contractors reasonably incur in managing the programs. 25 U.S.C. § 450j-1(a)(2).

The 1988 amendments to the ISDA made the Contract Disputes Act applicable to disputes concerning self-determination contracts. 25 U.S.C. § 450m-1(d). As a result,

ISDA self-determination contractors can appeal an adverse decision by a contracting officer on contract disputes to the Civilian Board of Contract Appeals, see 41 U.S.C. § 606, or to the Court of Federal Claims, see 41 U.S.C. § 609(a)(1). In addition, the ISDA permits contractors to bring claims in district courts, an avenue of relief that is generally unavailable to government contractors under the CDA. See 25 U.S.C. § 450m-1(a).

After the 1988 amendments took effect, some ISDA contractors claimed that the government was still failing to meet its obligation to fully fund the contract support costs. Those allegations resulted in the filing of several class action lawsuits, two of which are pertinent to the cases before us. In the first of those suits, the Cherokee Nation of Oklahoma filed a complaint and a request for class certification on March 5, 1999, in the United States District Court for the Eastern District of Oklahoma. The plaintiffs alleged that they had entered into contracts with the IHS to provide tribal health care services, but that the government had refused to pay the full amount of the promised support costs because Congress had failed to appropriate sufficient funds to cover those costs. The complaint sought certification of a class comprising "[a]ll Indian tribes and tribal organizations operating IHS programs under [ISDA contracts] that were not fully paid their contract support costs needs, as determined by IHS, at any time between 1988 and the present." Cherokee Nation of Okla. v. United States, 199 F.R.D. 357, 360 (E.D. Okla. 2001).

On February 9, 2001, the district court denied class certification. The court subsequently ruled on the merits that the government was not obligated to provide contract support costs in excess of the amount appropriated by Congress for that purpose, Cherokee Nation of Okla. v. United States, 190 F. Supp. 2d 1248, 1259 (E.D.

Okla. 2001), and the Tenth Circuit affirmed, <u>Cherokee Nation of Okla. v. Thompson</u>, 311 F.3d 1054, 1063 (10th Cir. 2002). After this court reached the opposite conclusion in another ISDA case, <u>Thompson v. Cherokee Nation of Okla.</u>, 334 F.3d 1075 (Fed. Cir. 2003), the Supreme Court granted certiorari to resolve the conflict. The Court subsequently held that the government could not avoid its contractual obligation to pay support costs to the plaintiff ISDA contractors on the ground that Congress had appropriated insufficient funds specifically designed to cover those costs, and that the government had to satisfy its contractual obligations out of other unrestricted appropriated funds. <u>Cherokee Nation of Okla. v. Leavitt</u>, 543 U.S. 631 (2005).

In the second lawsuit, the Pueblo of Zuni filed a class action on September 10, 2001, in the United States District Court for the District of New Mexico, similarly contending that the government had failed to pay full support costs to contractors who were providing tribal health services pursuant to ISDA contracts with the IHS. The asserted class consisted of "all tribes and tribal organizations contracting with IHS under the ISDA between the years 1993 to the present." <u>Pueblo of Zuni v. United States</u>, 467 F. Supp. 2d 1099, 1105 (D.N.M. 2006). That action was stayed pending the outcome of the <u>Cherokee Nation</u> litigation that was then on appeal to the Tenth Circuit. After the Supreme Court issued its <u>Cherokee Nation</u> decision, the stay in the <u>Zuni</u> case was lifted, and on May 22, 2007, the district court denied certification of the class. <u>Pueblo of Zuni v. United States</u>, 243 F.R.D. 436, 453 (D.N.M. 2007).

II

The Arctic Slope Native Association, Ltd. ("ASNA"), operates a federal hospital under an ISDA contract with the IHS. ASNA claims to have been a member of the

putative class in the <u>Zuni</u> litigation. On September 30, 2005, after the Supreme Court's decision in the <u>Cherokee Nation</u> case and while the <u>Zuni</u> class action was still pending, ASNA filed CDA claims with an IHS contracting officer alleging that the IHS had failed to pay the full amount of the contract support costs that ANSA had incurred to operate the hospital during fiscal years 1996 through 2000.

The Confederated Tribes of Coos, Lower Umpqua, and Siuslaw Indians ("Confederated Tribes") and the Metlakatla Indian Community also provide Indian health services pursuant to self-determination contracts with the IHS. They claim to have been members of the putative class in the <u>Cherokee Nation</u> action that was initiated in the Eastern District of Oklahoma. The Confederated Tribes filed claims with an IHS contracting officer on December 29, 2003, and September 27, 2004, seeking contract support costs for fiscal years 1995 through 1998; the Metlakatla Indian Community filed its claims with the an IHS contracting officer on June 30, 2005, seeking contract support costs for fiscal years 1995 through 1999.

The IHS contracting officers denied one claim and failed to act on the remaining claims, as a result of which those claims were deemed denied. <u>See</u> 41 U.S.C. § 605(c)(5). Each appellant then timely appealed to the Board of Contract Appeals. On July 28, 2008, the Board issued decisions in all three cases, holding that it lacked subject matter jurisdiction to consider those claims that the contractors had failed to submit to the contracting officers within six years of accrual, as mandated by the CDA. <u>See</u> 41 U.S.C. § 605(a).

Before the Board of Contract Appeals, the appellants argued that because they were members of the putative classes in either the <u>Cherokee Nation</u> or <u>Zuni</u> class

actions, the six-year period for filing their administrative claims under section 605(a) of the CDA was legally tolled until class certification was denied in those cases. See American Pipe & Constr. Co. v. Utah, 414 U.S. 538 (1974). The appellants also argued that the six-year period should have been extended in light of equitable considerations. The Board, however, ruled in each of the three cases that the six-year period was not subject to either legal or equitable tolling. Section 605(a), the Board explained, "does not contain a statute of limitations which imposes a time limit for filing suit. Rather, it imposes a time limit which this Board's precedent establishes is a prerequisite to our jurisdiction." The Board therefore dismissed all of the claims at issue in these appeals for lack of jurisdiction.

III

Section 605(a) of the CDA provides as follows, in pertinent part:

> All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. . . . Each claim by a contractor against the government relating to a contract . . . shall be submitted within 6 years after the accrual of the claim.

41 U.S.C. § 605(a). The statute further provides that the contracting officer's decision on the claim "shall be final and conclusive" unless review is sought by one of the specifically authorized means. Id. § 605(b). Section 606 of the CDA authorizes a contractor to appeal the decision of a contracting officer to an agency board of contract appeals within 90 days of the contractor's receipt of the decision. Section 609 of the Act gives the contractor the alternative of appealing the decision of the contracting officer to the Court of Federal Claims if the appeal is filed within 12 months of the receipt of the decision. The ISDA provides a third mechanism for review of decisions on contract

claims, giving United States district courts jurisdiction over any claim for money damages arising under contracts authorized by the Act, subject to the proviso that the CDA shall apply to the resolution of disputes concerning self-determination contracts. 25 U.S.C. § 450m-1(a), (d).

The government takes the position that, by virtue of the ISDA's incorporation of CDA procedures, the temporal scope of the waiver of sovereign immunity for the submission of ISDA administrative claims is six years, and that any claim not submitted to a contracting officer within that time period is jurisdictionally barred from further review, administrative or judicial. The appellants, on the other hand, assert that the six-year presentment period in section 605(a) can be equitably or legally tolled without exceeding the limits on the government's waiver of sovereign immunity. For the reasons set forth below, we hold that the six-year time limit for filing a claim with a contracting officer is not subject to statutory class action tolling in this case. However, we conclude that the six-year time period is subject to equitable tolling.

A

In <u>American Pipe & Construction Co. v. Utah</u>, 414 U.S. 538 (1974), the Supreme Court adopted the principle of "class action tolling." The Court noted that under the Federal Rules of Civil Procedure, a class action complaint effectively begins the lawsuit and stops the running of the statute of limitations for all class members with respect to the asserted cause of action. Because it is unknowable at the time a class action is filed whether the class will be certified, the Court held that even when the district court denies class certification, the statute of limitations is suspended during the pendency of the class action proceedings. The Court held that the benefit of that suspension

accrues not only to the named parties, but also to "all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." Id.; see also Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 353-54 (1983).

In Stone Container Corp. v. United States, this court explained that the Supreme Court's decisions in American Pipe and Crown, Cork & Seal "were not based on judge-made equitable tolling, but rather on the Court's interpretation of Rule 23 [of the Federal Rules of Civil Procedure]," which governs class actions in federal district courts. 229 F.3d 1345, 1354 (Fed. Cir. 2000). Rule 23 is designed to avoid the "unnecessary filing of repetitious papers and motions" and to promote economy of litigation. American Pipe, 414 U.S. at 550, 553. If the commencement of a class action did not toll the statute of limitations for putative class members, each class member would be required to file a separate action prior to the expiration of that class member's own limitations period. The result, the Supreme Court has explained, "would be a needless multiplicity of actions—precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of American Pipe were designed to avoid." Crown, Cork & Seal, 462 U.S. at 351.

The government contends that because the six-year time limit in section 605(a) is a condition on the waiver of sovereign immunity, it is a "jurisdictional statute [that is] not subject to judge-made class action tolling." Our decision in Stone Container, however, closes the door on that argument. In that case, we addressed the question whether Rule 23 of the Court of International Trade, which corresponds to Rule 23 of the Federal Rules of Civil Procedure, tolls the two-year statute of limitations on actions brought in that court pursuant to 28 U.S.C. § 1581. See 28 U.S.C. § 2636(i). Based on Congress's pronouncement that "[a]ll laws in conflict with [the Federal Rules of Civil

Procedure] shall be of no further force or effect after such rules have taken effect," 28 U.S.C. § 2072(b), we concluded that Rule 23 is "as binding as any federal statute." Stone Container, 229 F.3d at 1354, quoting Bank of Nova Scotia v. United States, 487 U.S. 250, 255 (1988). We went on to explain that because Rule 23 "is statutory rather than equitable, it follows that the rule of American Pipe applies to the government just as it does to private parties." Id. The government's contentions that class action tolling cannot apply to a temporal limitation on actions against the government, and that class action tolling is "judge-made" rather than statutory, therefore have no force in light of Stone Container.

The government's attempts to distinguish Stone Container are unavailing. Noting that the Civilian Board of Contract Appeals, unlike the Court of International Trade, does not have a class action provision corresponding to Rule 23 of the Federal Rules of Civil Procedure, the government suggests that for that reason class action tolling does not apply to claims before the Board. The government, however, has it backwards. The statutory authority for tolling the limitations period for a claim derives from the rule that provides the tolling, not from the rules of the court or board in which the tolling is asserted. Because the Zuni and Cherokee Nation class actions were brought in federal district court, the governing legal rule is Rule 23. The case for statutory class action tolling is even stronger here than in Stone Container because tolling in this case is required by Rule 23 and does not depend on a non-statutory court rule such as the class action rule of the Court of International Trade.

There is likewise no force to the government's reliance on our statement in Stone Container that the statute of limitations in the Court of International Trade specifically

incorporates the rules of that court. The government suggests that Rule 23 tolling before the Board is "not 'legal' tolling" because section 605(a) does not similarly confer statutory authority on the Board's rules. But, again, the governing rule here is Rule 23, not the rules of the Board. In Stone Container, it was important that the governing statute of limitations expressly incorporated the rules of the Court of International Trade because that court's rules, standing alone, are not statutory. Rule 23, however, is statutory. There is thus no need for section 605(a) to incorporate Rule 23 in order for Rule 23 to have binding legal effect.

Finally, the government asserts that because Stone Container "did not involve a jurisdictional statute of limitations," that decision does not support the application of class action tolling to CDA claims. The limitations statute at issue in Stone Container, however, constituted a waiver of sovereign immunity and thus defined the court's jurisdiction. See Stone Container, 229 F.3d at 1352; see also Martinez v. United States, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (en banc). Nonetheless, this court held that the statute in question, 28 U.S.C. § 2636(i), did not bar the application of class action tolling. Nothing in the language of section 2636(i) suggests that it is more amenable to tolling than section 605(a). Section 605(a) provides that a CDA claim against the government "shall be submitted within 6 years after the accrual of the claim." Section 2636(i) states that an action brought against the government in the Court of International Trade "is barred unless commenced . . . within two years after the cause of action first accrues." If anything, the "is barred" language of section 2636(i) is even more preclusive than the "shall be submitted" language of section 605(a). We therefore reject the government's sweeping contention that any time limitation, such as the

limitation in section 605(a), which defines the matters that a board or court may adjudicate, is not subject to class action tolling because that provision is "jurisdictional" in nature.

B

There is more force to the government's alternative, and narrower, argument that the appellants are not entitled to the benefit of class action tolling because their failure to present the disputed claims to a contracting officer within the six-year period provided in section 605(a) meant that they did not qualify as potential members of the plaintiff class with respect to those claims.

The six-year presentment period is part of the requirement in section 605(a) that all claims by a contractor against the government be submitted to the contracting officer for a decision. This court has held that the presentment of claims to a contracting officer under section 605(a) is a prerequisite to suit in the Court of Federal Claims or review by a board of contract appeals. England v. Swanson Group, 353 F.3d 1375, 1379 (Fed. Cir. 2004); Sharman Co. v. United States, 2 F.3d 1564, 1568 (Fed. Cir. 1993). Statutory time restrictions on the submission of administrative claims are a part of the requirement that a party must satisfy to properly exhaust administrative remedies. See Woodford v. Ngo, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules."). Therefore, subject to any applicable tolling of the statutory time period, the timely submission of a claim to a contracting officer is a necessary predicate to the exercise of jurisdiction by a court or a board of contract appeals over a contract dispute governed by the CDA.

The Confederated Tribes and the Metlakatla Indian Community did not present their claims to an IHS contracting officer for 1995-98 and 1995-99, respectively, until after class certification was denied in the <u>Cherokee Nation</u> action, more than six years after those claims accrued. ASNA presented its claims to the contracting officer during the pendency of the <u>Zuni</u> class action, but it did not do so until 2005, more than six years after its causes of action had accrued for 1995-99. The government contends that the appellants' failure to present their claims to contracting officers within six years of accrual means that those claims could not have been litigated in the <u>Zuni</u> and <u>Cherokee Nation</u> class actions even if those suits had been permitted to continue. Consequently, the government argues, the class action tolling rule does not apply to the appellants' claims.

The appellants argue that they are entitled to the benefits of the class action tolling rule despite their not having timely presented the disputed claims to contracting officers. They rely on a line of cases in which courts have held, in actions brought under Title VII of the Civil Rights Act of 1964, that an individual claimant need not exhaust administrative remedies to obtain a backpay award in a class action lawsuit, <u>see</u> <u>Albermarle Paper Co. v. Moody</u>, 422 U.S. 405, 414 n.8 (1975), and that the filing of a class action complaint therefore tolls the applicable statute of limitations as to all asserted members of the class who would have been parties if the suit had been permitted to continue as a class action, <u>see</u> <u>Griffin v. Singletary</u>, 17 F.3d 356, 360-61 (11th Cir. 1994); <u>Andrews v. Orr</u>, 851 F.2d 146, 149 (6th Cir. 1988); <u>Sharpe v. Am. Express Co.</u>, 689 F. Supp. 294 (S.D.N.Y. 1988); <u>see also</u> <u>Oscar Mayer & Co. v. Evans</u>,

441 U.S. 750, 758 n.6 (1979) (same rule applicable in representative actions under the Age Discrimination in Employment Act).

That line of cases is inapplicable here, however, because it is predicated on the Supreme Court's holding, in the Albermarle Paper Co. case, that Title VII permits an individual to be a class member and receive a backpay award in a class action suit even though that individual has not exhausted applicable administrative remedies under the Act. See also Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 398 (1982). As the Supreme Court has made clear, that principle derives from the specific language and legislative history of Title VII. See Albermarle Paper Co., 422 U.S. at 414 n.8.

Under other statutes, both the Supreme Court and the lower courts have held that a party that has not exhausted administrative remedies is not eligible to be a class member. For example, in cases involving classwide challenges to decisions by the Social Security Administration pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), the Supreme Court has held that asserted class members who were not alleged to have filed a timely administrative application for relief are not eligible to be members of the class and that the district court was "without jurisdiction over so much of the complaint as concerns the class." Weinberger v. Salfi, 422 U.S. 749, 763-64 (1975); see also Califano v. Yamasaki, 442 U.S. 682, 703-04 (1979) (class certification that included claimants who failed to file administrative claim for relief was "plainly too broad"); Mathews v. Eldridge, 424 U.S. 319 (1976) ("requirement that a claim for benefits shall have been presented to the Secretary" is nonwaivable and jurisdictional).[1]

---

[1] The plaintiffs rely on McDonald v. Sec'y of Health & Human Servs., 834 F.2d 1085 (1st Cir. 1987), in which the First Circuit allowed class action tolling in a class

Similarly, in class actions brought under the Federal Tort Claims Act ("FTCA"), the courts have uniformly held that a district court does not have jurisdiction over asserted class members who have not complied with the FTCA's administrative claim presentment requirements, and that the court lacks power to include those parties in the certified class. See In re "Agent Orange" Prod. Liability Litig., 818 F.2d 194, 198 (2d Cir. 1987); Lunsford v. United States, 570 F.2d 221, 224-27 (8th Cir. 1977); Commonwealth of Pa. v. Nat'l Ass'n of Flood Insurers, 520 F.2d 11, 23 (3d Cir. 1975). The court in the Lunsford case distinguished the different rule applied in actions under Title VII, noting that unlike actions under Title VII, suits under the FTCA are not "inherently class actions," and that the administrative agency in FTCA cases is given broad authority to settle cases, while the EEOC, the administrative agency to which administrative claims are submitted under Title VII, has only the authority to conciliate, not the authority to settle claims. In light of those distinctions, the instant cases are much more akin to the FTCA cases than to the Title VII cases: Contract disputes are not "inherently class actions," even though there may be legal issues in contract cases that are common to multiple contractors and multiple claims, and the agencies to which claims are presented under the CDA have broad settlement authority, not merely the power to conciliate.[2]

---

action under the Social Security Act, but that decision is not helpful to them. The court was careful to note that in that case all class members had satisfied the requirement of presenting a claim of benefits to the Secretary, and for that reason the district court had the authority to grant relief to those class members. Id. at 1092 n.4.

[2] The FTCA cases cannot be distinguished from this case on the ground that the presentment requirement under section 605(a) is not as rigid as the presentment requirement in the FTCA; to the contrary, although the presentment requirement in the FTCA, like the presentment requirement in section 605(a), is frequently referred to as

Finally, the Court of International Trade has held that the court lacks the authority under 28 U.S.C. § 1581(a) to exercise jurisdiction over asserted class members who have failed to complete the required administrative protest process under section 515 of the Tariff Act of 1930. Nu-Farm America's, Inc. v. United States, 398 F. Supp. 2d 1338, 1352-53 (Ct. Int'l Trade 2005). The court explained that the rationale of class action tolling—that the filing of the class action complaint ends the running of the statute of limitations as to all putative class members—does not apply to parties over whom the court has no authority to exercise jurisdiction, even if those parties' claims resemble the claims of the class members. For that reason, the court held that class action tolling is not available to a party who, because of failure to comply with a mandatory requirement to exhaust administrative remedies, could not be a class member if the class were certified. Id. at 1353-54.

In light of those authorities, the key question in determining whether class action tolling applies to this case is whether, with respect to the claims here in dispute, those parties who failed to make a timely presentment of their claims to a contracting officer would have been eligible to be class members if the People of Zuni and Cherokee Nation cases had continued as class actions. We conclude that they would not. The courts that have addressed the question have held that an ISDA claimant that has not

"jurisdictional," a majority of the courts of appeals have held that it is nonetheless subject to equitable tolling in appropriate cases. See T.L. ex rel. Ingram v. United States, 443 F.3d 956, 961 (8th Cir. 2006) ("[C]onsiderations of equitable tolling simply make up part of the court's determination whether an action falls within the scope of the waiver of sovereign immunity granted by Congress, and thus within the jurisdiction of the federal courts."); see also Santos ex rel. Beato v. United States, 559 F.3d 189, 194-95 (3d Cir. 2009); Ramirez-Carlo v. United States, 496 F.3d 41, 49 (1st Cir. 2007); Glarner v. U.S. Dep't of Veterans Admin., 30 F.3d 697 (6th Cir. 2004); contra Marley v. United States, 567 F.3d 1030 (9th Cir. 2009).

presented its claim to a contracting officer pursuant to the CDA cannot be a class member in an ISDA class action.  See Menominee Indian Tribe of Wis. v. United States, 539 F. Supp. 2d 152 (D.D.C. 2008); Pueblo of Zuni v. United States, 467 F. Supp. 2d 1099, 1113-14 (D.N.M. 2006); Ramah Navajo Sch. Bd., Inc. v. United States, 83 Fed. Cl. 786 (2008).[3]  Those decisions are consistent with the decisions cited above, holding that a party's failure to exhaust mandatory administrative remedies bars the court from treating that party as a class member.  In that setting, class action tolling does not apply because the party that failed to comply with the statutory requirement to present its claims to a contracting officer would not have satisfied the requirement, set forth in American Pipe, making class action tolling available "to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action."  414 U.S. at 554.

Class action tolling is unavailable in this situation for another reason as well.  Part of the rationale underlying class action tolling is that putative class members should be treated the same as actual parties to the litigation.  See American Pipe, 414 U.S. at 551 ("the claimed members of the class stood as parties to the suit until and unless they received notice and chose not to continue").  Yet to hold that the plaintiffs are entitled to tolling in this case based on their status as asserted class members would put them in a

---

[3]    The plaintiffs rely on an unpublished decision of the district court in Ramah Navajo Chapter v. Lujan, No. Civ 90-0957 (D.N.M. Oct. 1, 1993), as standing for the opposite proposition, but the court in that case did not adopt the general principle that asserted class members need not exhaust their administrative remedies in an ISDA contract case.  Instead, the court held that exhaustion of administrative remedies was not required under the circumstances of that case because it would have been futile.  The appellants have not argued that any "futility" exception excuses their failure to make timely presentments of the disputed claims to the contracting officers.

better position than they would have been in if they had actually been named parties in the Zuni and Cherokee Nation actions. If they had directly joined or intervened in those actions without previously presenting their claims to a contracting officer, those claims would have been subject to dismissal for failure to comply with the presentment requirement of section 605(a). Nor would the filing and pendency of their action in the district court have tolled the six-year presentment period. See Garrett v. United States, 640 F.2d 24, 26 (6th Cir. 1981) (FTCA presentment period not tolled by premature filing of civil action); Denton v. United States, 638 F.2d 1218, 1221 n.5 (9th Cir. 1981) (same); Miller v. United States, 418 F. Supp. 373, 378 (D. Minn. 1976).[4] Thus, if the six-year presentment period had lapsed while the two actions were pending, the plaintiffs' claims would be lost. Given that outcome in the hypothetical situation in which the plaintiffs directly participated in the two actions, it would make no sense to hold that they would be better off with respect to tolling rights if their participation in the two actions were limited to the status of asserted class members.

The plaintiffs argue that not allowing class action tolling in this situation would have the effect of making class actions unavailable in contract cases under the ISDA. As ASNA puts it, adopting that rule would "guarantee[] that no class action can ever exist in contract litigation" arising under the Act. That is plainly an overstatement, as it conflates the requirement of timely presentment to a contracting officer with the

_____

[4] Recognizing that non-tolling in such cases is the ordinary rule, Congress in 1988 amended the FTCA to allow for tolling in certain cases—where the United States is substituted as the party defendant and the action is dismissed for failure first to present an administrative claim. See 28 U.S.C. § 2679(d)(5). No statutory provision under the CDA or the ISDA allows for tolling of the presentment period when a premature action is filed before the Board or a court.

subsequent challenge to a contracting officer's adverse decision before a court or board. Requiring each potential class member to exhaust administrative remedies with respect to all claims that are subject to classwide relief is not the same as requiring that the potential class member take the further, and burdensome, step of individually challenging each contracting officer decision before a court or board. Once a party has submitted a timely claim to a contracting officer and the contracting officer has rejected the claim, either expressly or by failing to act on it in the statutorily prescribed period, the claimant would be eligible to benefit from classwide relief and would presumably be entitled to class action tolling with regard to the time limitations on any subsequent, individual challenge to the contracting officer's decision.

There is also no force to the plaintiffs' argument that the effect of rejecting class action tolling in these cases would be that tolling would be available only when a class is certified, which is precisely when tolling for individual actions is unnecessary. That argument overlooks the main point of class action tolling, which is to provide protection against the running of the statute of limitations for parties who could potentially be included as class members in a class action, but who are ultimately left outside the class, by a court's decision not to certify the class or to certify a narrow class that does not include them. See American Pipe, 414 U.S. at 553-54. That rationale would protect any potential class member over whom the court could exercise jurisdiction by class certification, but not parties, such as those who have failed to exhaust mandatory administrative remedies, over whom the court may not exercise jurisdiction.

It is true that the rule we adopt would require parties to devote resources to the submission of claims to contracting officers prior to the classwide resolution of the legal

issues in the case, and that under the contrary rule advocated by the plaintiffs such an expenditure of resources would ultimately be necessary only if the plaintiffs prevailed on their legal argument in the class action court.  As the claim letters in the record in this case show, however, such submissions to the contracting officer need not be elaborate. Moreover, where, as here, the various parties' claims all depend on a single legal theory—which will normally be the case when those claims are amenable to class action treatment—little separate effort will have to be devoted to each claim apart from identifying the amount of the claim.  At the same time, the submissions serve the useful function of apprising the government of the amount that is potentially at issue in the class action suit, which promotes the notice function that is part of the justification for the presentment requirement in the first place.  We therefore do not detect any compelling policy justification for extending the rule of class action tolling to this case; instead, we follow the principle set forth in the cases cited above and hold that class action tolling is not available to parties such as the plaintiffs in these cases, who have not made a timely presentation of their claims to a contracting officer.[5]

C

In the alternative, the plaintiffs contend that they are entitled to suspension of the six-year limitations period of section 605(a) under the doctrine of equitable tolling.  We agree with the plaintiffs that equitable tolling applies to that six-year time limitation, and

---

[5]   There is no merit to the plaintiffs' argument that the Board erred in relying on the definition of the term "claim" in the Federal Acquisition Regulation ("FAR") rather than looking to the ISDA regulations.  The Board's decision was not based on the plaintiffs' having filed something that did not qualify as a "claim" under the FAR but would have qualified as a "claim" under the ISDA regulations.  The problem is that the plaintiffs filed nothing with the contracting officers within the six years of accrual of the claims at issue that could qualify as a "claim" under any definition.

we remand for the Board to determine whether, on the facts of these cases, the appellants have established their entitlement to suspension of the limitations period.

The appellants first argue that the CDA's six-year presentment period is subject to equitable tolling under the principle articulated by the Supreme Court in Irwin v. Department of Veterans Affairs, 498 U.S. 89 (1990). In that case, which involved an employment discrimination action against the federal government, the Court held that, as a general rule, "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." 498 U.S. at 95-96. The key question under Irwin is whether "there [is] a good reason to believe that Congress did not want the equitable tolling doctrine to apply." United States v. Brockamp, 519 U.S. 347, 350 (1997) (emphasis in original); see Young v. United States, 535 U.S. 43, 49-50 (2002); Kirkendall v. Dep't of the Army, 479 F.3d 830, 836-37 (Fed. Cir. 2007) (en banc). The appellants assert that there is no reason in the context of section 605(a) to depart from the presumption that equitable tolling applies to the six-year presentment period in that statute.

For its part, the government contends that section 605(a) is the type of statute that the Supreme Court, in John R. Sand & Gravel Co. v. United States, 128 S. Ct. 750 (2008), held is not subject to equitable tolling. In that case, the Court held that 28 U.S.C. § 2501, the statute of limitations governing suits against the United States in the Court of Federal Claims, set forth an "absolute" time limit that could not be extended based on equitable considerations. 128 S. Ct. at 753-54. In so ruling, the Court relied on a long line of prior decisions holding that the Court of Claims' limitations statute could not be equitably tolled. The government asserts that section 605(a) is more akin to

section 2501 than to the statute at issue in Irwin, and that the time limitation of section 605(a) is therefore not subject to equitable tolling in light of John R. Sand & Gravel.

While it is not always easy to determine whether equitable tolling is available under particular statutes of limitations for actions against the government, our precedents and those of the Supreme Court persuade us that equitable tolling applies to the six-year time limitation set forth in section 605(a). Importantly, the Irwin presumption applies, which means that we must assume that Congress intended equitable tolling to be available unless there is good reason to believe otherwise. Unlike in the case of section 2501, there is no long history of case law holding that the time limitation of section 605(a) is absolute; in fact, the issue is one of first impression for this court. Moreover, the time limitation in section 605(a) is of relatively recent vintage. In fact, Congress adopted that time limitation after the decision in Irwin, and it is therefore reasonable to construe the statute in light of the general presumption set forth in Irwin. See Young, 535 U.S. at 49-50 ("[L]imitations periods are customarily subject to equitable tolling, unless tolling would be inconsistent with the text of the relevant statute. Congress must be presumed to draft limitations periods in light of this background principle."). The rationale of John R. Sand & Gravel, that the Court had long treated the time limitation of section 2501 as not amenable to equitable tolling, and that the Court was not prepared to disregard principles of stare decisis with respect to its prior rulings on the same statute, is therefore inapplicable here.

Beyond that, the Supreme Court and this court have identified several factors as instructive in determining whether a particular time limitation is subject to equitable tolling. The Supreme Court discussed those factors in United States v. Brockamp, 519

U.S. 347, 350-53 (1997), and this court subsequently summarized the "Brockamp factors" as calling for analysis of "the statute's detail, its technical language, its multiple iterations of the limitations period in procedural and substantive form, its explicit inclusion of exceptions, and its underlying subject matter." Kirkendall, 479 F.3d at 836-37.

Application of those factors here strongly supports the conclusion that the time limitation of section 605(a) is amenable to equitable tolling. The statutory time limitation of section 605(a) is a simple provision and does not contain technical language. It provides in the simplest terms that each claim by a contractor "shall be submitted within 6 years of the accrual of the claim." Nor does section 605(a) contain any explicit exceptions to the six-year limitation period on claim submissions by contractors. The Supreme Court has noted that where such express statutory exceptions are present, they provide a basis for inferring that Congress may not have intended other, unspecified exceptions to apply. Brockamp, 519 U.S. at 352. The government argues that the statute contains an express exception, in that it provides that the six-year period shall not apply to claims by the government based on contractor claims involving fraud. That exception, however, applies only to claims by the government; the inference that Congress did not intend any implied exceptions to the six-year period for contractors to submit their claims is not as strong as it would be if there were any express exceptions applicable to contractors' claims.

Of course, a central factor in determining whether a particular statute is subject to equitable tolling is the language used to set forth the time limitation. The more emphatic the language, the less likely it is that Congress contemplated that the time limitation

would be subject to implied exceptions. The language of the time limitation in section 605(a) is anything but emphatic; it simply states that the claim "shall be submitted" within six years. That formulation is less pointed than the language at issue in Kirkendall, where the two statutes at issue provided that a complaint "must be filed within 60 days" and that an appeal shall be filed in accordance with prescribed procedures, but "in no event may any such appeal be brought" more than 15 days after receipt of notification of an administrative denial. Despite that seemingly preclusive statutory language, this court concluded that the Irwin presumption had not been overcome as to either limitations period. Accordingly, with regard to the language of the limitations period, the availability of equitable tolling in this case would seem to follow a fortiori from the court's analysis in Kirkendall.[6]

In sum, while we agree with the government that class action tolling does not apply to the claims at issue in these cases, we do not agree that the limitations period in section 605(a) is absolute and not subject to equitable tolling. We remand for a determination as to whether, under the circumstances of these cases, the limitation period should be tolled.

No costs.

<u>AFFIRMED IN PART, REVERSED IN PART, and REMANDED</u>.

---

[6] Section 605(a) is in the nature of a statute of limitations, not a statute that governs the timing of review. The Supreme Court's decision in <u>Bowles v. Russell</u>, 551 U.S. 205 (2007), and the pending en banc proceeding in <u>Henderson v. Shinseki</u>, No. 2009-7006, therefore do not control the disposition of the equitable tolling issue in this case.

2008-1532,-1607, 2009-1004          24