# United States Court of Appeals
# for the Federal Circuit

_____

**ARCTIC SLOPE NATIVE ASSOCIATION, LTD.,**
*Appellant,*

v.

**KATHLEEN SEBELIUS,**
**SECRETARY OF HEALTH AND HUMAN**
**SERVICES,**
*Appellee.*

_____

2011-1485

_____

Appeal from the Civilian Board of Contract Appeals in case nos. 190-ISDA, 289-ISDA, 290-ISDA, 291-ISDA, 292-ISDA, and 293-ISDA, Administrative Judge Jeri Kaylene Somers.

_____

Decided: November 9, 2012

_____

LLOYD B. MILLER, Sonosky, Chambers, Sachse, Miller & Munson, LLP, of Anchorage, Alaska, argued for appellant. With him on the brief was DONALD J. SIMON. Of counsel on the brief were CARTER G. PHILLIPS and JONATHAN F. COHN, Sidley Austin, LLP, of Washington, DC.

JACOB A. SCHUNK, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and KIRK T. MANHARDT, Assistant Director. Of counsel on the brief were MELISSA JAMISON and SEAN DOOLEY, Senior Attorneys, Office of the General Counsel, United States Department of Health and Human Services, of Washington, DC.

———————————————

Before BRYSON, MAYER and REYNA, *Circuit Judges.*

Opinion for the court filed by Circuit Judge REYNA.
Dissenting opinion filed by Circuit Judge BRYSON.

REYNA, *Circuit Judge.*

Arctic Slope Native Association, Ltd., ("ASNA") appeals a decision of the Civilian Board of Contract Appeals ("Board") dismissing ASNA's breach-of-contract claim under the Contract Disputes Act ("CDA") as time-barred. Because the CDA's six-year statute of limitations should have been equitably tolled, we reverse and remand.

I

ASNA is an inter-tribal consortium of seven federally recognized tribes situated across the North Slope of Alaska. In fiscal years 1996, 1997, and 1998, ASNA contracted with the Department of Health and Human Services, Indian Health Service ("IHS") pursuant to the Indian Self-Determination and Education Assistance Act ("ISDA") to operate a hospital in Barrow, Alaska. ISDA,

as amended, requires the government to pay tribal contractors' contract support costs,[1] *i.e.*, costs that a federal agency would not have incurred but which the tribes reasonably incur in managing the programs. When the government refused to pay the full contract support costs sought by the tribes, the tribes sued.

## A. Legal Landscape

In 1990, the Ramah Navajo Chapter filed a class action in federal district court in New Mexico to recover damages for the underpayment of contract support costs. *See Ramah Navajo Chapter v. Babbitt*, 50 F. Supp. 2d 1091 (D.N.M. 1999). *Ramah* challenged the government's

---

[1]    25 U.S.C. § 450j-1(a)(2): "There shall be added to the amount required by paragraph (1) contract support costs which shall consist of an amount for the reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which– (A) normally are not carried on by the respective Secretary in his direct operation of the program; or (B) are provided by the Secretary in support of the contracted program from resources other than those under contract."

25 U.S.C. § 450j-1(a)(3)(A): "The contract support costs that are eligible costs for the purposes of receiving funding under this Act shall include the costs of reimbursing each tribal contractor for reasonable and allowable costs of– (i) direct program expenses for the operation of the Federal program that is the subject of the contract, and (ii) any additional administrative or other expense related to the overhead incurred by the tribal contractor in connection with the operation of the Federal program, function, service, or activity pursuant to the contract, except that such funding shall not duplicate any funding provided under section 106(a)(1) [subsec. (a)(1) of this section]."

methodology used to determine the applicable contract support costs.  The issue of exhaustion of administrative remedies arose at the outset of the litigation. The government argued that the claims of the class were not typical because while the class representative had exhausted its administrative remedies, there was no showing that other class members had done so.  According to the government, "the theory is that the exhaustion of administrative remedies is jurisdictional and that if the remedies have not been exhausted, the Court's action regarding the class would be without jurisdiction."  J.A. 137.

In 1993, Judge Hanson of the District Court of New Mexico rejected the Government's exhaustion of administrative remedies argument and certified the class.   He explained:

> Plaintiff's action does not concern a typical contract dispute wherein issues of performance need be addressed.  If that were the case, the purposes behind exhaustion of administrative remedies would require that the contract claim first be brought to the attention of an agency contracting officer.  Instead, Plaintiff's action challenges the policies and practices adopted by the BIA as being contrary to the law and seeks to make systemwide reforms.  In such a case as this, exhaustion of administrative remedies is not required.  In light of the above, it *is not necessary that each member of the proposed class exhaust its administrative remedies under the Contract Disputes Act.*

J.A. 319 (emphasis added).[2]  ASNA was a class member in *Ramah* and received funds flowing from a partial settle-

_____

[2]    On December 6, 2002, prior to the expiration of ASNA's claims in the *Zuni* litigation with respect to fiscal

ment of that litigation. Like the plaintiffs in *Ramah*, ASNA challenged the agency's practices and procedures concerning payout of support costs.

In the second class action—*Cherokee Nation of Oklahoma v. United States*—the court denied class certification in February 2001 because typicality, commonality, and adequate representation were not met since the contracts differed by tribe. 199 F.R.D. 357, 362 (E.D. Okla. 2001). This action concerned IHS's refusal to pay tribes the full contract support costs because of an alleged lack of available appropriations and the class, as described, would have included contractors, like ASNA, who had not yet presented claims to the contracting officer. Specifically, it sought certification of a class including "all Indian tribes and tribal organizations operating [Indian Health Service] programs . . . authorized by the [ISDA] . . . that were not fully paid their contract support costs needs, as determined by [the Indian Heath Service], at any time between 1988 and the present." *Id.* at 360. The court later ruled on the merits, and the merits decision, not the denial of class certification, was appealed to the U.S. Supreme Court, which rendered a decision on March 1, 2005. *See Cherokee Nation v. Leavitt*, 543 U.S. 631 (2005). In reaching this conclusion, the court did not discuss or rely upon the fact that some tribes had exhausted their remedies while others had not.

---

years 1996, 1997, and 1998, the *Ramah* court entered an order noting that the government would resist class certification on at least one of the new claims and that "decertification of [both claims] is a possibility." *Ramah Navajo Chapter v. Babbitt*, 250 F. Supp. 2d 1303, 1308 (D.N.M. 2002). The same decision also stated that "[a] number of decisions have been announced . . . which are harmful to the Class'[s] claims." *Id.*

A third class action—*Pueblo of Zuni v. United States*—was filed on September 10, 2001, in the District Court of New Mexico and assigned to Judge Hanson, the same judge who had granted class certification in *Ramah*. 467 F. Supp. 2d 1099, 1105 (D.N.M. 2006). The complaint claimed that IHS improperly calculated contract support costs, as alleged in *Ramah*, and failed to pay the full amount owed, as alleged in *Cherokee*. *Zuni* sought to certify a class of "all tribes and tribal organizations contracting with IHS under the ISDA between fiscal years 1993 to the present." *Id.*

In December 2001, before Zuni moved for class certification, the proceedings in *Zuni* were stayed pending the conclusion of the appellate proceedings in *Cherokee*. *Zuni* was then transferred to a different judge. After the stay was lifted, the government moved to dismiss a portion of the claims at issue in *Zuni* because the tribe had not first submitted all of its claims to the contracting officer. The district court granted the motion. *Zuni*, 467 F. Supp. 2d at 1112. The court rejected Zuni's purported reliance upon the 1993 certification order in *Ramah* as justifying its failure to exhaust its administrative remedies, noting that "Plaintiff can hardly be said to rely on the oblique argument that a class certification order in a separate case allows Plaintiff to forego exhaustion of their claims in this case." *Id.* at 1114.

In May 2007, the district court denied Zuni's motion for class certification because "exhaustion under the CDA is mandatory and jurisdictional" and "the existence of unexhausted claims within the claims of the putative class remains a jurisdictional defect, precluding class certification." *Pueblo of Zuni v. United States*, 243 F.R.D. 436, 442–43 (D.N.M. 2007). According to the district court, "[t]here is no legal basis for a waiver of this requirement for Plaintiff or any putative class member,

given the express mandate for presentment with the statutory language." *Id.* The district court also found that "[t]he terms and conditions of the tribal contracts were sufficiently individualized so that the question of whether all tribal contractors were underpaid becomes one of the disputed issues," *id.* at 448, and that "[t]he nature of this kind of case with individualized contracts does not lend itself to class litigation." *Id.* at 446.

## B. Procedural History

ASNA contends that it was a putative class member in the foregoing class actions even though it did not individually present its claims in writing to the contracting officer within the CDA's six-year statute of limitations. As will be discussed in more detail below, the Federal Circuit ultimately held that the ISDA was subject to equitable tolling, but not statutory class action tolling, and remanded the case to the Board to determine if the statute of limitations should be equitably tolled as to ASNA. The Board found that ASNA did not satisfy the equitable tolling criteria. Whether the Board erred in that determination is the narrow question presented in this appeal.

On September 30, 2005, after the Supreme Court issued its decision in *Cherokee* and while the *Zuni* class action was pending, ASNA presented its CDA claims to the IHS contracting officer. It is undisputed that, absent equitable tolling, these claims had each expired as of the date of their presentment to the contracting officer.

In its letter to IHS, ASNA argued that IHS failed to meet its contractual and statutory obligations in two ways. First, it failed to pay the full amount of ASNA's contract support costs. Second, it failed to include in the calculation of those costs the full indirect contract support costs by employing the same illegal calculation methodol-

ogy that was struck down in *Ramah*. ASNA presented arguments to the IHS that were similar to the underpayment arguments it made to the court in *Ramah* and *Zuni*.

On August 21, 2006—almost a year before the district court denied the motion for class certification in *Zuni*—ASNA filed a complaint with the Board, alleging IHS's failure to pay the full contract support costs and to calculate the costs correctly. The Board dismissed ASNA's claims as time-barred, reasoning:

> ASNA's failure to submit its FY 1996 through FY 1998 claims to the awarding official within six years after they accrued, as required by section 605(a) of the CDA deprives this Board of jurisdiction to consider the claims. We cannot suspend the running of the six-year time limit any more than we could suspend the requirements, also found in section 605 that a claim must be submitted to the contracting officer, that a claim must be submitted in writing, and that a claim in excess of $100,000 must be certified. In the absence of a claim which meets all the requirements of section 605, we lack jurisdiction to consider an appeal.

J.A. 32.

ASNA appealed the Board's decision to the Federal Circuit. We affirmed the Board's decision regarding statutory class action tolling but held that equitable tolling is available for claims brought under § 605(a) of the CDA. We remanded the case to the Board for a determination as to whether equitable tolling applied to ASNA.

On remand, a Majority of the Board found on June 9, 2011 that ASNA had not met the criteria for equitable tolling after reading *Cherokee* as requiring it to treat

ASNA as a contractor and the contract as an ordinary procurement contract.[3] In reaching this conclusion, the Board observed that prior to 1994, no statute of limitations applied to the presentment of claims to the contracting officer. Specifically, the six-year statute of limitations took effect in 1994, one year *after* the district court granted class certification in *Ramah*. Second, although the Supreme Court had justified equitable tolling where a defective pleading was involved, the complaint in *Zuni* was not defective. Indeed, the district court did not dismiss the *Zuni* complaint, and class members that had complied with the presentment requirement could continue to litigate the claims set forth therein. The Majority of the Board reasoned that since ASNA did not take the actions required to be considered a purported class member—*i.e.*, timely present its claims to the contracting officer—then equitable tolling did not apply. According to the Majority, ASNA had a responsibility to investigate the applicable legal landscape in pursuing its claims and to make an independent and reasoned decision, rather than relying upon Judge Hanson's court order. The Majority pointed out that ASNA had not established that the conduct of its adversary caused it to miss the statutory deadlines and determined that ASNA's decision could not turn on the presumed litigation position of an opposing party.

The Majority was unconvinced by ASNA's argument that the special relationship between the government and Indian tribes warranted application of equitable tolling. As the Majority explained, "[t]he canon that statutes should be interpreted for the benefit of the tribe does not mean that a statute should be interpreted in a manner

---

[3]    It is worth noting that the Majority's interpretation of *Cherokee* was issued almost five years after ASNA filed its claims with the CDA in August 2006.

divorced from the statute's text and purpose." ASNA App. 11a (citing *U.S. v. Tohono O'odham Nation*, 131 S. Ct. 1723 (2011)). The Majority reasoned that recognition of tribes' special status simply requires construing ambiguous language in their favor, not ignoring the meaning and import of clear statutory language. In distinguishing the veterans' cases relied upon by ASNA for its assertion that equitable tolling was warranted given its special relationship with the government, the Majority noted that ASNA had competent and capable counsel throughout the litigation whereas many veterans proceed *pro se*. ASNA App. 13a.

In her dissent, Judge Steel wrote that the case should be resolved in ASNA's favor given the special relationship between the government and Indian tribes, the canon of construing the ISDA liberally, and the pertinent language of the statute and contracts.

This appeal followed. We have jurisdiction under 28 U.S.C. § 1295(a)(10).

## II

Because we have already determined that equitable tolling may apply under § 605 of the CDA, the narrow question presented in this appeal is whether the six-year statute of limitations should have been equitably tolled as to ASNA given the unique circumstances of the case. *Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 583 F.3d 785, 798 (Fed. Cir. 2009) ("*ASNA I*").

### A. Standard of Review

Where, as here, the facts are undisputed, a determination of whether the criteria for equitable tolling have been met presents a question of law that we review *de novo*. 41 U.S.C. § 7107(b); *Former Employees of Sonoco Prods. Co. v. Chao*, 372 F.3d 1291, 1295 (Fed. Cir. 2004).

## B.  ISDA and the CDA

Prior to 1988, the ISDA did not require the government to pay the administrative costs that the tribes incurred to operate the covered programs.  *ASNA I*, 583 F.3d at 788.  The 1988 amendments to the ISDA required the government, instead of contractors, to provide funds to pay the administrative expenses of covered programs. *Id.* (citing statutory amendments).   The ISDA amendments made the CDA applicable to disputes concerning self-determination contracts. 25 U.S.C. § 450m-1(d).  As a result, ISDA self-determination contractors can appeal an adverse decision by a contracting officer on contract disputes to the Civilian Board of Contract Appeals, *see* 41 U.S.C. § 606, or to the Court of Federal Claims.  *See* 41 U.S.C. § 609(a)(1).  In addition, the ISDA permits contractors to bring claims in district courts, an avenue of relief that is generally unavailable to government contractors under the CDA.  *ASNA I,* 583 F.3d at 789 (citing 25 U.S.C. § 450m-1(a)).

In claims between the government and contractors, the federal regulations discussing the CDA defines "claim" as a written demand or assertion by one of the contracting parties seeking the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract.  48 C.F.R. § 2.101.  While a "claim" need not use particular language to satisfy CDA requirements, the contractor must submit in writing to the contracting officer a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.  *SITCO Gen. Trading and Contracting Co. v. U.S.*, 87 Fed. Cl. 506, 508 (Fed. Cl. 2009) (citing *Contract Cleaning Maint. Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1987)).  The CDA requires a contractor to present the written claim to the contracting officer

within six years of a claim's accrual before bringing suit. 41 U.S.C. § 7103(a).  The six-year statute of limitations at issue here was implemented in 1994 when Congress passed the Federal Acquisition Streamlining Act.  Prior to 1994, no statute of limitations applied to the presentment of claims to a contracting officer.

## C.  Equitable Tolling

Equitable tolling hinges upon the particular equities of the facts and circumstances presented in each case.  *See ASNA I*, 583 F.3d at 798, 800.  It "permits courts to modify a statutory time limit and 'extend equitable relief' when appropriate." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990).  Equitable tolling applies where the litigant proves: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2553 (2010).  The exercise of equity powers must be made on a case-by-case basis, *id.* at 2564, and equitable relief is typically extended only sparingly.  *See Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1344–45 (Fed. Cir. 2011) (en banc).  Equitable tolling does not apply to garden variety claims of excusable neglect, such as an attorney miscalculation leading to a missed deadline. *Holland*, 130 S. Ct. at 2564.

## D.  Analysis

ASNA argues that equitable tolling should apply because it did not sleep on its rights and it reasonably relied upon the *Zuni* class action as well as its reasonable interpretation of the then-existing legal landscape to conclude that it need not present its claims to the contracting officer or file its own civil suit in order to preserve its claims.

The government counters that ASNA failed to take timely action to diligently pursue its rights and that no extraordinary circumstance prevented it from doing so. According to the government, ASNA's reliance on *Ramah* was misplaced because the CDA's six-year statute of limitations was not in effect when the district court granted class certification in *Ramah*, and the claims in *Ramah* substantially differed from ASNA's claims. The government argues that it was foreseeable that the *Zuni* class might be denied certification, especially since the proposed class in *Cherokee* (involving claims nearly identical to ASNA's), was not certified, and the district court in *Ramah* inferred that decertification was possible in light of the new cost claims added to *Ramah* after class certification was granted as to the calculation methodology claim. The government contends that there was no change in the law because the grant of class certification in *Ramah* hinged upon the fact that the case challenged system-wide policies and practices, and therefore, did not concern a typical contract case. The government argues that ASNA was aware of the pertinent legal landscape because ASNA's President "was kept informed of general litigation activities concerning contract support costs, including activities in ongoing class action lawsuits." J.A. 436.

We agree with ASNA that equitable tolling should apply and remand to the Board for proceedings consistent with this opinion.[4] There is no dispute that ASNA relied on the *Ramah*, *Cherokee*, and *Zuni* litigation in deciding that it was not required to present its claims to the con-

---

[4] We are not bound by and therefore decline to follow the reasoning recently employed by a district court in a similar case. *See Menominee Indian Tribe of Wis. v. United States*, 2012 U.S. Dist. LEXIS 8108 (D.D.C. Jan. 24, 2012) (refusing to apply equitable tolling).

tracting officer within the six-year limitations period. The critical questions are whether ASNA pursued its rights diligently even though it did not present and whether its reliance on the then-existing legal landscape in deciding not to present constituted an "extraordinary circumstance" sufficient to warrant equitable tolling of the filing deadline.

Here, the *Zuni* complaint was filed on behalf of "all tribes and tribal organizations contracting with IHS under the ISDA between fiscal years 1993 to the present." The parties agree that ASNA was such a tribe and had contracted with the ISDA during that period. The *Zuni* complaint sought damages for contract support under-payments and defective cost calculation methodology– the same claims ASNA wished to assert. The class certification description did not mention exhaustion of administrative remedies. *Zuni* was assigned to the same judge in the same district court that had certified a similar class in *Ramah* in 1993 involving the same issues and held that class members did not have to satisfy exhaustion requirements to participate in the class.

ASNA's President was aware that "ASNA's claims had already succeeded in *Ramah* without ASNA filing its own claims." J.A. 437. As he explained, "[s]ince the *Zuni* case covered all of ASNA's claims, I concluded that the most efficient course of action was to remain in the *Zuni* case, just as ASNA has remained in the *Ramah* case, because ASNA's claims had already succeeded in *Ramah* without ASNA filing its own claims, and because filing our own claims could apparently remove ASNA from the new *Zuni* class." [5] *Id.* Monitoring and reasonably inter-

---

[5] ASNA appears to have alleged that the government implied that ASNA's exhaustion of its administrative remedies might have imperiled its chances of being a

preting applicable legal proceedings, judicial order and opinions, and taking action as necessary does not constitute sleeping on one's rights, particularly in the class action context where parties who believe they are putative class members often remain passive during the early stages of the litigation allowing the named class representatives to press their claims.

ASNA participated in the *Ramah* and *Zuni* litigations, including taking action to receive its share of settlement proceeds from *Ramah*. Once the *Zuni* stay was lifted in 2005, the government indicated that it would challenge the holding in *Ramah* that presentment was unnecessary to be a class member. In response, ASNA swiftly and diligently presented its claims to the contracting officer in September 2005– without waiting for a court ruling on the presentment issue. ASNA took further precautionary steps when it filed a complaint with the Board in 2006. Only after the case was transferred to a different judge in 2007 did the district court explicitly exclude non-presenters like ASNA from the putative class.

Although the District Court of Oklahoma had denied class certification in *Cherokee* as of February 2001, that decision was not controlling upon the District Court of New Mexico where *Zuni* was pending. The only controlling, on-point authority on that court at that time (2007) was *Ramah*, in which the same judge had explicitly held that a putative class member need not exhaust its admin-

___

class member. In any event, ASNA appears to have conceded at oral argument that it did not rely upon this argument on appeal, and we do not rely upon it in reaching our decision. Oral Argument, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2012-05-07/all.

istrative remedies to be a member of the class.[6]  The facts and circumstances on which Judge Hanson based his order were similar, if not identical to, the operative facts and circumstances on which the *Zuni* complaint was based.  We hold that given the existence of the unambiguous court order that specifically addressed the exhaustion of remedies issue and the fact that ASNA diligently pursued its rights by monitoring the relevant legal landscape, ASNA took reasonable, diligent, and appropriate action as the legal landscape evolved.

This result is not fundamentally unfair to the government because filing of the *Zuni* complaint put IHS on notice of the exact nature and scope of ASNA's claims.  "Limitations periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 353 (1983). Having adequate notice, the government was aware of its need to preserve evidence.  This is especially true where, as here, the evidence consists of documents in the administrative record, and there are few, if any, concerns about fading witness memory.

The Supreme Court and Congress have repeatedly recognized the special relationship between the government and Indian tribes. *E.g.*, *United States v. Mitchell*, 463 U.S. 206, 225 (1983); 25 U.S.C. § 450a(b) (reaffirming the federal government's "unique and continuing relation-

---

[6]  Although not dispositive, we note that some circuits have equitably tolled a statute of limitations when a party detrimentally relied on ambiguity in law or controlling precedent that was later resolved against the party or overturned.  *See, e.g.*, *York v. Galetka*, 314 F.3d 522, 525 (10th Cir. 2003); *Harris v. Carter*, 515 F.3d 1051, 1056–57 (9th Cir. 2008).

ship with, and responsibility to, individual Indian tribes and to the Indian people as a whole"). Consequently, we must judge the government's conduct with the Indian tribes by "the most exacting fiduciary standards." *Seminole Nation v. United States*, 316 U.S. 286, 297 (1942). This special relationship is especially crucial under the ISDA, which Congress passed to facilitate and promote economic growth and development amongst the Indian tribes. *See generally* S. Rep. No. 100-274, at 4–7 (1987) (detailing federal policies encouraging Indian self-determination and tribal economic development). The Select Committee on Indian Affairs recognized that self-determination contracts supporting local government services on Indian lands were "essential to the success of Indian economic development efforts." *Id.* at 7. Although not dispositive, the existence of the special relationship between the government and Indian tribes supports our holding.

In sum, the previous class actions involved similar issues and parties, and put the government on notice of the general nature and legal theory underlying ASNA's claims. ASNA pursued its rights by monitoring the legal landscape and taking action as appropriate. ASNA reasonably relied upon controlling authority, which held that it did not need to exhaust administrative remedies to be a class member. Our conclusion that equitable tolling applies is informed by these unique facts and extraordinary circumstances, taken together with the obligations flowing from the special relationship between the government and Indian tribes. For the foregoing reasons, we reverse and remand for proceedings consistent with this opinion.

**REVERSED AND REMANDED**

COSTS

No costs.

# United States Court of Appeals for the Federal Circuit

———————————

**ARCTIC SLOPE NATIVE ASSOCIATION, LTD.,**
*Appellant,*

v.

**KATHLEEN SEBELIUS, SECRETARY OF HEALTH AND HUMAN SERVICES,**
*Appellee.*

———————————

2011-1485

———————————

Appeal from the Civilian Board of Contract Appeals in case nos. 190-ISDA, 289-ISDA, 290-ISDA, 291-ISDA, 292-ISDA, and 293-ISDA, Administrative Judge Jeri Kaylene Somers.

———————————

BRYSON, *Circuit Judge*, dissenting.

The question before us boils down to whether the Arctic Slope Native Association ("ASNA") was diligent in pursuing its breach of contract claim. The majority believes that it was; I believe that it was not.

I

The Supreme Court has held that a litigant seeking equitable tolling "is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently,

and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010), citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). The Court has allowed equitable tolling "where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 & n.3 (1990). Neither of those conditions is present here. ASNA does not suggest that its failure to present its claims on a timely basis was the result of government misconduct, and this case does not involve the filing of a defective pleading, such as a pleading filed in the wrong court. *E.g.*, *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424 (1965); *Herb v. Pitcairn*, 325 U.S. 77 (1945). Moreover, although the Supreme Court in *Irwin* cited *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), as an example of a case in which the timely filing of a defective class action tolled the limitations period as to individual claims of purported class members, *see* 498 U.S. at 96 n.3, it has already been determined that class action tolling is unavailable to ASNA. In *Arctic Slope Native Ass'n v. Secretary of Health & Human Services*, 583 F.3d 785, 795 (Fed. Cir. 2009) ("*Arctic Slope I*"), we rejected ASNA's claim that it is entitled to class action tolling based on its expectation that it would be a class member in the *Zuni* litigation, so that avenue of relief is closed.

## II

In my view, ASNA did not exercise reasonable diligence to protect its rights. ASNA could have, and should have, presented its claims to the contracting officer within six years of their accrual, for two reasons. First, although

ASNA claims that it relied on the class certification in the *Ramah* litigation, ASNA had two indications, prior to the expiration of the six-year limitations period, that certification of the class in *Ramah* may have been unusual: (1) the *Ramah* court itself suggested, as the case evolved and certain claims were added (namely, claims alleging that the tribes' full contract support costs should be paid), that the continued appropriateness of a class action was questionable, and (2) the district court in the *Cherokee* case denied class certification on claims essentially identical to those presented in *Zuni*. Second, it would have been very easy for ASNA simply to present its claims to a contracting officer and comply with the statutory presentment requirement.

The indications that the *Ramah* certification may have been questionable would have led a reasonably diligent party to file its claims with the contracting officer before they expired. Approximately a decade after the *Ramah* complaint was filed, the *Ramah* plaintiffs added new claims similar to those in the *Cherokee* and *Zuni* cases. On December 6, 2002, the *Ramah* court entered an order noting that the government would resist class certification on at least one of the new claims and that "decertification of [both claims] is a possibility." *Ramah Navajo Chapter v. Norton*, 250 F. Supp. 2d 1303, 1308 (D.N.M. 2002). And in *Cherokee*, which involved claims essentially the same as those presented in *Zuni*, the district court denied class certification in February 2001, prior to the expiration of ASNA's claims. Although the court in that case denied certification because individual questions predominated over class questions, the court noted that the government had argued that certification was inappropriate because the proposed class "fail[ed] to exclude putative class members whose claims in this case are barred by the six-year general statute of limitations."

*Cherokee Nation of Okla. v. United States*, 199 F.R.D. 357, 362 (E.D. Okla. 2001).

ASNA nevertheless claims that "[t]he undisputed evidence is that ASNA was 'surprised' to learn that the government [in 2005 after the Supreme Court's decision in *Cherokee Nation v. Leavitt*, 543 U.S. 631 (2005)] was insisting that every tribal contractor had to have individually presented its own claims." ASNA claims it was surprised "because in *Ramah* [the district judge] had already ruled to the contrary, and because, based on that ruling, over $100 million dollars had already been paid to *Ramah* class members like ASNA who had never presented their claims." Even if ASNA truly was surprised, the surprise can be attributed to—at best—negligence, which is "not a basis for equitable tolling." *See Holland*, 130 S. Ct. at 2573. ASNA was or should have been aware of the statute requiring exhaustion within six years. ASNA was or should have been aware of the government's position that claimants who had failed to exhaust were not eligible to be members of the classes in *Ramah* and *Cherokee*. Finally, ASNA was or should have been aware of the indications in both *Ramah* and *Cherokee* that the class in *Zuni* might not be certified.

The fact that the district judge in *Ramah* had previously held that presentment was not necessary in that case does not save ASNA here. *Ramah* was a different case and, at the time of the decision on which ASNA relies, that case did not involve claims similar to those presented by the plaintiffs in *Cherokee* and *Zuni*. Additionally, after the judge certified the class in *Ramah*, the six-year limitations period was added to the statutory exhaustion requirement. Thus, in addition to the fact that *Ramah* was a different case with different claims, the judge in *Ramah* was operating under a different

statutory framework at the time class certification was granted than was the judge who denied class certification in *Zuni*. Accordingly, a reasonably diligent party would have inferred that *Zuni* was not likely to proceed in the same manner as *Ramah*.

The diligence issue is also influenced by the fact that very little effort would have been required for ASNA to present its claims to the contracting officer. In *Arctic Slope I*, this court noted that the claim letter submissions to the contracting officer "need not be elaborate." 583 F.3d at 797. The letters in the record consist of approximately two typewritten, single-spaced pages for each fiscal year. The letters for each year appear to be identical except for the amount of the claimed damages. It seems reasonable to assume that anyone familiar with the situation could have prepared the letters with minimal expenditure of time and effort. The damages figure itself appears to be the only element of the letters that required any effort to derive. However, ASNA presumably would have had to present the damages figures to the district court in *Zuni* had its case proceeded there, so there was no added burden on ASNA in having to obtain those figures. Accordingly, a prudent course would have been for ASNA to prepare and submit the letters prior to the expiration of its claims, even if it believed its participation in the *Zuni* class might ultimately make the letters unnecessary. ASNA knew or should have known that the statute required exhaustion, and ASNA knew or should have known that the government was seeking to enforce the statute. With that knowledge, a reasonably diligent party would have prepared and presented the letters prior to the expiration of the six-year period.

Even if ASNA's conduct were regarded as satisfying the diligent pursuit of rights prong of *Holland*, nothing in

ASNA's presentation suggests that this case satisfies Holland's second prong, which requires that in addition to demonstrating diligence, the party claiming equitable tolling against the government must show that "some extraordinary circumstance stood in his way and prevented timely filing." Nor has the majority pointed to any facts that would suffice to meet that exacting standard.[1]

ASNA's other arguments for applying equitable tolling are not convincing. First, ASNA contends that the government is not likely to be prejudiced by its failure to file its claims on a timely basis, but even assuming that to be the case, the absence of prejudice does not trigger the right to equitable tolling. *See Baldwin Cnty. Welcome Center v. Brown*, 466 U.S. 147, 152 (1984) ("Although absence of prejudice is a factor to be considered in determining whether the doctrine of equitable tolling should apply once a factor that might justify such tolling is identified, it is not an independent basis for invoking the doctrine and sanctioning deviations from established procedures."). Second, ASNA argues that equitable tolling is warranted because Indian tribes are disadvantaged and protected plaintiffs. This court, however, has specifically rejected that argument, noting that "statutes of limitations are to be applied against the claims of Indian tribes in the same manner as against any other litigant seeking legal redress or relief from the govern-

---

[1] The United States District Court for the District of Columbia has agreed that equitable tolling is unavailable to a party in essentially the same position as ASNA. *Menominee Indian Tribe v. United States*, 841 F. Supp. 2d 99 (D.D.C. 2012). While that decision is, of course, not binding on us, it contains a detailed analysis of the Supreme Court's *Irwin* and *Holland* decisions and, as the only precedent dealing with the precise issue before us, is entitled to careful consideration.

ment."  *Hopland Band of Pomo Indians v. United States*, 855 F.2d 1573, 1576 (Fed. Cir. 1988).

In sum, I believe that a reasonably diligent party in ASNA's position would have presented its claims to a contracting officer before the six-year limitations period expired.  Moreover, in this case there were no "extraordinary circumstances [that] stood in [ASNA's] way and prevented timely filing."  *Holland*, 130 S. Ct. at 2562.  I would therefore affirm the decision of the Board holding ASNA's claims to be time-barred.