# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Environmental Safety Consultants, Inc. ) | ASBCA No. 58343 |
| ) | |
| Under Contract No. N62470-95-B-2399 ) | |

APPEARANCE FOR THE APPELLANT: Mr. Peter C. Nwogu
President

APPEARANCES FOR THE GOVERNMENT: Ronald J. Borro, Esq.
Navy Chief Trial Attorney
Ellen M. Evans, Esq.
Senior Trial Attorney

## OPINION BY ADMINISTRATIVE JUDGE FREEMAN ON THE GOVERNMENT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

Environmental Safety Consultants, Inc., (ESCI) appeals the deemed denial of its termination settlement claim under the captioned contract (hereinafter "Contract 2399"). The Board, *sua sponte*, noted the possible lack of jurisdiction over a substantial amount of the claim and requested the parties to brief the issue. The government's brief concludes that: "the board lacks authority over the entire case," and that "the appeal should be dismissed for lack of jurisdiction." We construe this conclusion as in substance a motion to dismiss.

ESCI opposes the motion on the grounds of (i) equitable tolling of the statute of limitations and (ii) that the claim for increased costs over and above the contract price did not accrue until 12 June 2012 when the government withdrew its appeal to the Federal Circuit from the Board's 28 September 2011 decision converting the termination for default to a termination for convenience. We grant the government's motion in part.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. This appeal arises out of our decision of 28 September 2011 converting the government's termination for default of Contract 2399 to a termination for convenience of the government. *See Environmental Safety Consultants, Inc.*, ASBCA No. 51722, 11-2 BCA ¶ 34,848. Familiarity with that decision is assumed.

2. Contract 2399 was a firm-fixed-price construction contract. At award on 13 November 1995, the firm-fixed-price was $561,764.25 (R4, tab 1 at 15).[1] On 7 April 1997, ESCI submitted to the contracting officer a comprehensive proposal for an increase of $205,463.60 in the contract price for the costs of additional work and delays allegedly caused by the government (R4, tab 12 at 9).

3. In bilateral Modification No. P00006, effective 24 June 1997, the parties modified the contract deleting five items of specified work and adding nine items of additional work. The additional work items included among others:

> j. Subcontract all remaining work, including supervision, quality control, and punchlist items.

> k. Provide additional overhead costs incurred due to subcontracting.

> ....

> m. Provide additional labor and time for entering, leaving, and working in the Q-Area.

> n. Provide extended overhead for the Government delays under this contract.

(R4, tab 2 at 11-12)

4. Modification No. P00006 concluded with a summary of the agreed price adjustment and contract completion date for the additions and deletions of work and a general release as follows:

> 2. TOTAL AMOUNT OF ADDITIONAL WORK    $199,301.00
>     TOTAL AMOUNT OF CREDITS          $199,192.00

> The total contract price is increased by $109.00 from $561,764.25 to $561,873.25.

> The contract completion date is extended by 308 calendar days from August 26, 1996, to June 30, 1997.

> The foregoing is agreed to as constituting full and equitable adjustment and compensation (both time and

---

[1] All Rule 4 citations refer to the Rule 4 filed in ASBCA No. 51722.

money) attributable to the facts of [sic] circumstances giving rise to the change directed hereby, including but not limited to, any changes, differing site conditions, suspensions, delays, rescheduling, accelerations, impact, or other causes as may be associated therewith.

(R4, tab 2 at 2)

5. Modification No. P00006 was signed by Peter Nwogu on behalf of ESCI without reservations on 23 June 1997 (R4, tab 2 at 1). Also on 23 June 1997, Peter Nwogu signed ESCI's Invoice No. 7 which among other things stated that the total contract value was $561,873.25 (the amount agreed to in Modification No. P00006) (R4, tab 14).

6. No work was performed on the contract after 16 June 1997. *Environmental Safety Consultants*, 11-2 BCA ¶ 34,848 at 171,430, finding 19. On 12 June 1998, the contract was completely terminated for default for failure to make progress to ensure completion of the work and failure to perform the work within the specified time (R4, tab 2 at 13). There were no contract modifications increasing the contract price after Modification No. P00006. At termination, the contract price was the price agreed to by the parties in Modification No. P00006 ($561,873.25). Over the course of the contract, the government paid ESCI a total amount of $303,990.00 in progress payments (R4, tab 13 at 1, tab 14 at 1).

7. Pursuant to paragraph (c) of the FAR 52.249-10, DEFAULT (FIXED-PRICE CONSTRUCTION) (APR 1984) clause of the contract, and as a result of our decision sustaining the appeal from the default termination, "the rights and obligations of the parties will be the same as if the termination had been issued for the convenience of the Government" (R4, tab 1 at 69).

8. The 52.249-2, TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (FIXED-PRICE) (APR 1984)–ALTERNATE I clause in Contract 2399 stated in pertinent part:

> (d) After termination the Contractor shall submit a final termination settlement proposal to the Contracting Officer in the form and with the certification prescribed by the Contracting Officer....

> (e) Subject to paragraph (d) above, the Contractor and the Contracting Officer may agree upon the whole or any part of the amount to be paid because of the termination.... However, the agreed amount, whether

under this paragraph (e) or paragraph (f) below, exclusive of costs shown in subparagraph (f)(3) below, [2] may not exceed the total contract price as reduced by (1) the amount of payments previously made and (2) the contract price of work not terminated....

(f) If the Contractor and Contracting Officer fail to agree on the whole amount to be paid the Contractor because of the termination of work, the Contracting Officer shall pay the Contractor the amounts determined as follows, but without duplication of any amounts agreed upon under paragraph (e) above:

(1) For contract work performed before the effective date of termination, the total (without duplication of any item) of–

(i) The cost of this work;

(ii) The cost of settling and paying termination settlement proposals under terminated subcontracts that are properly chargeable to the terminated portion of the contract if not included in subdivision (i) above; and

(iii) A sum, as profit on (i) above, determined by the Contracting Officer under 49.202 of the Federal Acquisition Regulation, in effect on the date of this contract, to be fair and reasonable, however, if it appears that the Contractor would have sustained a loss on the entire contract had it been completed, the Contracting Officer shall allow no profit under this subdivision (iii) and shall reduce the settlement to reflect the indicated rate of loss.

(2) The reasonable costs of settlement of the work terminated, including—

---

2  There is no subparagraph (f)(3) in the Alternate I clause, but the same provisions that are in subparagraph (f)(3) of the basic clause are in subparagraph (f)(2) of the Alternate I clause.

(i) Accounting, legal, clerical, and other expenses reasonably necessary for the preparation of termination settlement proposals and supporting data;

(ii) The termination and settlement of subcontracts (excluding the amounts of such settlements); and

(iii) Storage, transportation, and other costs incurred, reasonably necessary for the preservation, protection or disposition of the termination inventory.

9. On 5 July 2012, ESCI submitted to the contracting officer a Standard Form (SF) 1436 "SETTLEMENT PROPOSAL (TOTAL COST BASIS)" for the termination of Contract 2399. The net proposed settlement was $1,183,366.59. (App. supp. R4, vol. I, tab 3 at 1-4) The contracting officer did not respond to this proposal. On 14 September 2012, ESCI submitted the proposal as a certified claim under the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 7101-7109 (app. supp. R4, vol. I, tab 5 at 1-2). The contracting officer refused to either negotiate a settlement agreement or issue a final decision on the claim. In her opinion, the claim was "conceived in fraud and is permeated by fraud, [and] the contracting officer lacks authority to decide it or settle it." (Answer ¶ 8)

10. On 29 September 2012, ESCI appealed the deemed denial of its termination settlement claim. The appeal was docketed as ASBCA No. 58343. The monetary elements of ESCI's termination settlement claim were:

| | |
|---|---:|
| Direct Material | $ 0.00 |
| Direct Labor | 1,021,306.00 |
| Other Costs | 13,000.00 |
| General & Administrative | 17,000.00 |
| Profit | 155,145.90 |
| Settlement with Subcontractors | 252,503.97 |
| Settlement Expenses | 175,248.40 |
| Finished Product Invoiced | (268,326.62) |
| Disposal & Other Credits | (182,511.19) |
| Net Proposed Settlement | $1,183,366.59 |

(App. supp. R4, vol. I, tab 3 at 1)

11. Pursuant to paragraph (e) of the Termination for Convenience clause the termination settlement, exclusive of the termination settlement expenses, cannot exceed the total contract price as reduced by (1) the amount of payments previously made and (2) the contract price of work not terminated (*see* SOF ¶ 8). The total

amount of costs and profit in ESCI's termination settlement claim, excluding the settlement expenses ($175,248.40), was $1,458,955.87. This claimed amount was $897,082.62 more than the total contract price at termination. (*See* SOF ¶ 10)

12. ESCI contends that the settlement amount it claims in excess of the contract price at termination is due to the increased cost it incurred in performing the work as a result of government changes and delays which require an equitable adjustment to the contract price. We assume for purposes of the motion that this contention is correct.

13. The FAR 52.233-1, DISPUTES (MAR 1994) clause in Contract 2399 stated in pertinent part:

> (a) This contract is subject to the Contract Disputes Act of 1978, as amended (41 U.S.C. 601-613).

> (b) Except as provided in the Act, all disputes arising under or relating to this contract shall be resolved under this clause.

> (c) "Claim," as used in this clause, means a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to this contract.... However, a written demand or written assertion by the Contractor seeking the payment of money exceeding $50,000 is not a claim under the Act until certified as required by subparagraph (d)(2) below.

> ....

> (d)(1) A claim by the Contractor shall be made in writing and submitted to the Contracting Officer for a written decision.

(R4, tab 1 at 68)

14. When Contract 2399 was awarded, Section 605(a)[3] of the CDA stated in pertinent part: "Each claim by a contractor against the Federal Government relating

---

[3] Now 41 U.S.C. § 7103(a)(4)(A).

to a contract shall be submitted to the contracting officer for a decision," and "Each claim by a contractor against the Federal Government relating to a contract...shall be submitted within 6 years after the accrual of the claim." When Contract 2399 was awarded, FAR 33.201 stated that: "'Accrual of a claim' occurs on the date when all events, which fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known." FAC 90-32, October 1, 1995 at 33-7.

15. Considering that ESCI's proposal for a price adjustment for government-responsible changes and delays of the work was submitted to the government in the amount of $205,463.60 on 7 April 1997, and that no work on the contract was performed after 16 June 1997, we conclude that all of the events fixing the liability of the government, and permitting the assertion of a claim for equitable adjustment of the contract price for the alleged increased incurred cost of the contract work, were known or should have been known by ESCI no later than the date the contract was terminated for default on 12 June 1998.

16. ESCI's 7 April 1997 letter was a "proposal" for a price adjustment in the amount of $205,463.60. It did not request a contracting officer's final decision on the proposed adjustment. It did not provide the certification for a claim in that amount as required by the CDA. (R4, tab 12) Neither the 7 April 1997 proposal nor any other communication in the record before us on the motion was a CDA claim for an equitable adjustment in the Contract 2399 price prior to the inclusion of these increased costs in the 14 September 2012 termination settlement claim.

## DECISION

Our jurisdiction over the claimed price adjustment for excess costs included in ESCI's 14 September 2012 termination settlement claim depends on (i) when did the claim or claims for price adjustment for the alleged increased costs "accrue," and (ii) when did ESCI submit a CDA claim to the contracting officer for a price adjustment for those costs. ESCI does not contest the fact that it did not submit a certified CDA claim for its alleged costs that exceeded the contract price until it included those costs in its termination settlement claim submitted on 14 September 2012. That submission was 14 years after the claim for equitable adjustment had accrued and eight years after the six-year statute of limitations had run. Citing *Arctic Slope Native Ass'n, Ltd. v. Sebelius*, 699 F.3d 1289 (Fed. Cir. 2012) (hereinafter "*Arctic Slope II*"), ESCI argues that the running of the CDA statute of limitation for its increased cost claim was tolled until the default termination was converted to a termination for convenience because: "Appellant could not have reasonably filed for payment of completed work and increases [sic] contract costs while it was pursuing government's default termination from June 30, 1997 to September 28, 2011" (app. br. at 7).

Equitable tolling of a statute of limitations applies where the litigant proves: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Arctic Slope II* at 1295. In *Arctic Slope II*, the court held that the plaintiff Indian tribe had diligently monitored a class action suit against the government, and as a putative member of the class reasonably believed that it was not necessary to file an individual claim on the same matter that the class action was prosecuting. The court also held that, as an extraordinary circumstance, "the federal government's 'unique and continuing relationship with, and responsibility to, individual Indian tribes and to the Indian people as a whole'" required that "we must judge the government's conduct with the Indian tribes by 'the most exacting fiduciary standards.'" *Id.* at 1297-98.

There are no such extraordinary circumstances in ESCI's case here. ESCI is not an Indian tribe or other entity with which the government had to conduct its business by "the most exacting fiduciary standards."

ESCI contends that "the government's default termination claim had to be resolved before appellant could reinstate its request for equitable adjustment pursuant to [the] CDA" (app. br. at 12). We disagree. All events necessary to fix liability on the government for any incurred increased costs of performing the contract were known or should have been known no later than 12 June 1998, the date the contract was terminated for default (*see* SOF ¶ 15). There were no legal or other impediments at that time or thereafter to ESCI submitting an affirmative claim for equitable adjustment of the contract price.

A timely written notice to the contracting officer demanding as a matter of right a price adjustment in a sum certain for the increased costs, and certifying that demand as required by the CDA, was all that was necessary for ESCI to assert its claim for a contract price adjustment for purposes of the statute of limitations. There is no evidence that some "trickery" or misleading action of the government caused the untimely submission of such a claim. Absent evidence otherwise, we believe that ESCI's untimely submission was caused by its lack of due diligence in preserving its legal rights under the contract. Such "garden variety claim of excusable neglect," is not a basis for equitable tolling of the statute of limitations. *See Bernard Cap Company*, ASBCA No. 56679 *et al.*, 10-1 BCA ¶ 34,387 at 169,801.

Excluding the claimed termination settlement expenses ($175,248.40), the total amount of ESCI's termination settlement claim for the cost and reasonable profit of performing the contract up to the date of termination ($1,458,955.87) exceeded the total contract price ($561,873.25) by $897,082.62 (*see* SOF ¶ 11). Since a CDA claim for a price adjustment for those alleged increased costs was not timely submitted to the contracting officer, we have no jurisdiction over that claimed amount in this appeal and give it no further consideration. *Voices R Us, Inc.,*

8

ASBCA Nos. 51565, 52307, 01-1 BCA ¶ 31,328 at 154,748; *Skip Kirchdorfer, Inc.*, ASBCA No. 40515 *et al.*, 93-3 BCA ¶ 25,899 at 128,837.

The government argues that, without ESCI "properly segregating the costs associated with the time-barred claims, the entire appeal should be dismissed (gov't br. at 6). We disagree. The termination settlement expenses ($175,248.40) that are excluded from the paragraph (e) limit, and the termination settlement amount up to the contract price ($561,873.25) remain within our jurisdiction.

The motion to dismiss is granted with respect to the $897,082.62 that exceeds the contract price and is denied in all other respects.

Dated: 25 July 2014

MONROE E. FREEMAN, JR.
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

JACK DELMAN
Administrative Judge
Acting Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58343, Appeal of Environmental Safety Consultants, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals