**Mark and Melanie WAX, as the Parents and Natural Guardians of Andrew Wax, a minor, Petitioners,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Respondent.**

**No. 03–2830V**

United States Court of Federal Claims.

Filed December 18, 2012

National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa–1 to 300aa–34 (2006); motion for review of findings of fact of special master; statute of limitations, 42 U.S.C. § 300aa16(a)(2); equitable tolling.

## MEMORANDUM OPINION AND ORDER

MILLER, Judge.

This case is before the court on a motion for review of a decision denying compensation to petitioners under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa–1 to 300aa–34 (2006) (the "Vaccine Act"). The court has confirmed that the record on review supports the recitation of facts in Chief Special Master Patricia E. Campbell–Smith's opinion. *See Wax v. Sec'y of Health & Human Servs.*, No. 03–2830V, 2012 WL 3867161 (Fed.Cl.Spec.Mstr. Aug. 7, 2012). Unless otherwise noted, the court does not supply its own findings because the special master's findings have record support. *See* 42 U.S.C. § 300aa–12(e)(2)(B) (providing that reviewing court may make findings of fact if it first determines that those of special master are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law). The issue before the court is whether the special master's findings and conclusion as a matter of law that petitioners' claim for compensation was untimely filed should be upheld. Argument is deemed unnecessary.

## FACTS

Petitioner Andrew Wax ("Andrew") was born on October 23, 1992, and received routine childhood vaccines between November 11, 1992, and March 18, 1997. *Wax*, 2012 WL 3867161, at *4. Andrew's father reported that Andrew exhibited "long sleep patterns" over the days immediately following vaccinations and that Andrew developed a 103–degree fever after receiving vaccinations on February 14, 1994. *Id.* Although Andrew was assessed as "well" and demonstrated the ability to say two words at his two-year well-child physician visit on October 12, 1994, he was diagnosed with a speech delay at his three-year well-child visit on November 9, 1995. *Id.* A psychologist diagnosed Andrew

Michael A. London, New York, NY, for petitioners. Virginia E. Anello, Douglas & London, P.C., of counsel.

Lynn E. Ricciardella, Washington, DC, with whom was Acting Assistant Attorney General Stuart F. Delery, for respondent.

with autistic disorder on August 25, 1998. *Id.*

On April 3, 2002, Mark and Melanie Wax, Andrew's parents ("petitioners"), filed suit in the United States District Court for the Eastern District of New York against the vaccine manufacturer on the theory that the Thimerosal[1] content in the vaccines caused Andrew's autism. *Id.* at *1, *9. After the district court entered a stay on October 30, 2002 to permit petitioners to proceed under the National Vaccine Injury Compensation Program (the "Program"), *see* 42 U.S.C. §§ 300aa–1 to 300aa–34, it dismissed petitioners' suit on December 16, 2002, *see* 2012 WL 3867161, at *9.

## PROCEDURAL HISTORY

Petitioners filed a Short–Form Autism Petition for compensation under the Program on December 17, 2003. *Id.* at *1. After completion of hearings in the six test cases in the Omnibus Autism Proceeding, petitioners filed supporting medical records in January 2009. *Id.* On March 4, 2009, respondent moved to dismiss the petition as untimely filed. *Id.* After the parties completed briefing, petitioners were permitted to file an amended petition. *Id.* On February 29, 2012, the special master issued a decision dismissing the petition as untimely. *Id.* at *2. Petitioners filed a motion for reconsideration on March 21, 2012, by which they sought an opportunity to address the issue of equitable tolling. *Id.* The special master entered an order on the next day withdrawing the dismissal and setting a briefing schedule. *Id.* After completion of briefing, the special master issued a decision on August 7, 2012, finding that petitioners were not entitled to equitable tolling and dismissing the petition as untimely filed. *Id.* at *14. Petitioners filed a motion for review pursuant to RCFC App. J, Rule 23 on September 6, 2012, and

respondent filed her response on October 9, 2012.

## DISCUSSION

■ This court has authority to "set aside any findings of fact or conclusion of law of the special master found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 42 U.S.C. § 300aa–12(e)(2)(B). When the matter for review is whether the special master's decision was in accordance with law—i.e., when a question of law is at issue—the court reviews the decision *de novo*. *Althen v. Sec'y of Health & Human Servs.*, 418 F.3d 1274, 1277–78 (Fed.Cir.2005).

Petitioners raise two questions of law. First, petitioners argue that the statute of limitations applicable to this case, *see* 42 U.S.C. § 300aa–16(a)(2) (2006), effects an unconstitutional taking of petitioners' property rights in their cause of action without due process of law. Pet'rs' Br. filed Sept. 6, 2012, at 13–15. Second, petitioners argue that the special master's finding that their claim was not subject to equitable tolling was contrary to law. *Id.* at 16–19. Accordingly, the court reviews those issues *de novo*.

### I. *Equitable tolling*

■ Mindful of the "ordinary rule that a federal court should not decide federal constitutional questions where a dispositive nonconstitutional ground is available[,]" *Hagans v. Lavine*, 415 U.S. 528, 547, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974), the court turns first to petitioners' equitable tolling argument. During the pendency of this action, the United States Court of Appeals for the Federal Circuit reversed itself in holding that equitable tolling applies to claims under the Vaccine Act. *See Cloer v. Sec'y of Health & Human Servs.*, 654 F.3d 1322, 1340–44 (Fed.Cir.2011) (en banc), *rev'g Brice v. Sec'y of Health & Human Servs.*, 240 F.3d 1367 (Fed.Cir. 2001).[2] The Federal Circuit further held

1. Thimerosal is used as a preservative in vaccines. *See Wax*, 2012 WL 3867161, at *10 n. 16 (citation omitted).

2. Although the Supreme Court of the United States denied *certiorari* on an appeal from this decision in *Cloer*, *see* —— U.S. ——, 132 S.Ct. 1908, 182 L.Ed.2d 807 (2012), the Court recently

granted a petition for review of a separate *Cloer* decision involving the issue of the availability of attorneys' fees, see *Cloer v. Sec'y of Health & Human Servs.*, 675 F.3d 1358 (Fed.Cir.2012), *cert. granted,* —— U.S. ——, 133 S.Ct. 638, 184 L.Ed.2d 452 (2012). The decision under review has no bearing on the subject matter of this opinion.

that the Vaccine Act's statute of limitations "begins to run on the date of occurrence of the first symptom or manifestation of onset of the vaccine-related injury for which compensation is sought, and the symptom or manifestation of onset must be recognized as such by the medical profession at large." *Id.* at 1335.

The parties briefed the applicability of *Cloer* [3] and the question of the eligibility of the claim for equitable tolling in the proceedings before the special master. *See Wax,* 2012 WL 3867161, at *2–3. Noting that the effective filing date of petitioners' vaccine claim was the date on which petitioners filed suit in the district court—April 3, 2002—pursuant to the Vaccine Act's savings provision, 42 U.S.C. § 300aa–11(a)(2)(B), the special master nonetheless found that petitioners had not pursued their rights diligently because they had not filed suit prior to the expiration of the Vaccine Act's limitations period. *Id.* at *8–12. According to the special master, the triggering event for the running of the statute of limitations was Andrew's November 9, 1995 speech delay diagnosis, as "[i]t is well-documented that speech delay is commonly the first symptom of an [autism spectrum disorder]." *Id.* at *5. Petitioners did not file suit in the district court until April 3, 2002, well after the expiration of the thirty-six-month limitations period, *see* 42 U.S.C. § 300aa–16(a)(2), in November 1998, *id.* at *9, *11. Thus, the special master found, petitioners had not shown that they were pursuing their claim diligently. *Id.* at *11. The special master further found that no extraordinary circumstances prevented petitioners from pursuing their claim, as a temporary change in the definitions section of the Vaccine Act enacted after petitioners filed their claim could not have caused petitioners' alleged confusion about where to file their claim. *Id.* at *13–14. Consequently, the special master concluded that equitable tolling did not apply. *Id.* at *14.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo,* 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005) (citing *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)); *see also Cloer,* 654 F.3d at 1344–45 (citing *Pace* and *Irwin* ); *Arctic Slope Native Ass'n, Ltd. v. Sebelius,* 699 F.3d 1289, 1295 (Fed.Cir.2012) (citing *Holland v. Florida,* — U.S. ——, 130 S.Ct. 2549, 2553, 177 L.Ed.2d 130 (2010); *Irwin; Cloer.*) Courts assess the applicability of equitable tolling "on a case-by-case basis," applying the principle "sparingly." *Arctic Slope Native Ass'n,* 699 F.3d at 1295 (citing *Holland,* 130 S.Ct. at 2553; *Cloer,* 654 F.3d at 1344–45). "Equitable tolling does not apply to garden[-]variety claims of excusable neglect[.]" *Id.* at 1295 (citing *Holland,* 130 S.Ct. at 2564). Thus, petitioners must demonstrate that they diligently pursued their rights but were prevented from that pursuit by some "extraordinary circumstance."

Petitioners argue that they have pursued their rights diligently, pointing out that they filed suit in federal district court before putatively applicable state tort statutes of limitations had run. Pet'rs' Br. filed Sept. 6, 2012, at 9–10, 16–17. Petitioners filed in district court rather than through the Program because the Vaccine Act excludes claims based upon adulterants in vaccines, and they believed at the time they filed suit that Thimerosal was considered an adulterant. *Id.* at 8–9. Pointing to an order entered in a vaccine case, as well as various state and federal court decisions, petitioners explain that they filed suit "at a time when courts had held the Vaccine Act did not have jurisdiction over actions alleging injuries as a result of Thimerosal contained in childhood vaccines[.]" *Id.* at 9–10 (citing *Geppert v. Sec'y of Health & Human Servs.,* No. 00–0286V (Fed.Cl.

---

**3.** Petitioners record their disagreement with *Cloer,* but acknowledge that the court must follow binding precedent, *see* Pet'rs' Br. filed Sept. 6, 2012, at 4 n. 1, which the special master denominated as "acced[ing] [*sic* ] that their argument is … unavailing[,]" *Wax,* 2012 WL 3867161, at *6. Petitioners do point out that the special master ruled on one argument that they did not make, *see* Pet'rs' Br. filed Sept. 6, 2012, at 4 n. 1, which could have had the unfortunate effect of detracting from the arguments that they did press.

Spec.Mstr. Mar. 21, 2001); *Mead v. Aventis Pasteur, Inc.,* No. 0107–07136 (Or. Cir., Multnomah Cnty. July 12, 2002); *King v. Aventis Pasteur, Inc.,* 210 F.Supp.2d 1201 (D. Or. June 7, 2002); *Garcia v. Aventis Pasteur, Inc.,* No. C02–0168C (W.D.Wash. Apr. 22, 2002)). While petitioners do not dispute that they did not file a claim before the Vaccine Act's statute of limitations had run, they urge that because they did not learn that Andrew was autistic until 1998 and did not learn of a possible connection between autism and childhood vaccines until 2001, they diligently pursued their rights by filing suit in April 2002. *Id.* at 17.

Petitioners also argue that extraordinary circumstances prevented them from pursuing their rights, citing the decision of the district court to dismiss their suit on the ground that the Vaccine Court had jurisdiction over petitioners' claims. *Id.* at 17–18. According to petitioners, prior to that dismissal they reasonably believed that the district court was the proper venue for their claim and assert that, in the absence of the district court's decision, they would have continued to pursue their claim in that court. *Id.* at 18.

Respondent counters that petitioners did not pursue their rights diligently, arguing that petitioners cannot rely on their misunderstanding of the law to demonstrate diligence. Resp't's Br. filed Oct. 9, 2012, at 13. Respondent faults petitioners' diligence because they did not file suit until more than six years after Andrew first manifested symptoms of autism, well after the statute of limitations had run. Id. at 14. Although petitioners seek a ruling that they pursued their rights diligently once they discovered a potential link between childhood vaccines and autism, respondent points out that the Federal Circuit expressly rejected such an argument in *Cloer.* *Id.* at 14–15 (citing 654 F.3d at 1327–28, 1345).

Respondent further denies that any extraordinary circumstance prevented petitioners from pursuing their claim. The district court's dismissal of petitioners' suit in December 2002 has no bearing on petitioners' ability to pursue a Vaccine Act claim before the statute of limitations ran in November 1998. *Id.* at 15–16. To the extent that petitioners rely on a supposed ambiguity as to whether Thimerosal should be considered an adulterant and that claims based upon its effects were not governed by the Vaccine Act, respondent states that petitioners did not consider that issue until after the Vaccine Act's statute of limitations had expired. *Id.* at 16. Any such ambiguity therefore could not have been an impediment to timely filing a claim under the Vaccine Act. *Id.* Moreover, respondent maintains, statutory ambiguity is not an extraordinary circumstance warranting equitable tolling. *Id.* at 16–17 (citing *Esso Standard Oil Co. v. United States,* 559 F.3d 1297, 1305 (Fed.Cir.2009); *Pace v. Vaughn,* 71 Fed.Appx. 127, 129 (3d Cir. 2003)).

 This court rules that petitioners did not show before the special master that they pursued their claim diligently. Andrew was diagnosed with a speech delay on November 9, 1995, and with autistic disorder on August 25, 1998. *Wax,* 2012 WL 3867161, at *4. Petitioners filed their district court suit on April 3, 2002. *Id.* at *1. As held by the Federal Circuit in *Cloer,* the Vaccine Act requires a petitioner to file a claim within thirty-six months of the first manifestation of autism symptoms, not the discovery of the cause of injuries. 654 F.3d at 1340; *see also* 42 U.S.C. § 300aa–16(a)(2). Petitioners did not file their district court suit before the passage of thirty-six months from the first manifestation of Andrew's autism symptoms, i.e., the speech delay diagnosed on November 9, 1995, and the record does not reflect any effort by petitioners to seek legal recourse before the expiration of the limitations period. In short, petitioners filed an untimely complaint in the wrong venue. That does not constitute the diligent pursuit of petitioners' rights. *See Irwin,* 498 U.S. at 96, 111 S.Ct. 453 ("We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal

rights.") (internal citations and footnotes omitted).

Although petitioners suggest that they filed suit in the district court because of a good-faith belief that their claim did not come within the Vaccine Act, the effect of any such confusion is moot because the effective date of petitioners' claim is deemed to be the date on which they filed their district court suit. *See Wax,* 2012 WL 3867161, at *9. Thus, petitioners received the temporal benefit of filing their district court suit, even if they mistakenly filed in the incorrect venue. With respect to the decisions cited by petitioners to demonstrate that they filed their district court suit "at a time when courts had held the Vaccine Act did not have jurisdiction over actions alleging injuries as a result of Thimerosal contained in childhood vaccines," *see* Pet'rs' Br. filed Sept. 6, 2012, at 9–10, all but one of those decisions were filed after petitioners had filed their suit. Petitioners do point to one March 2001 special master order stating that the Vaccine Act "does not encompass injuries related to '[m]ercury, aluminum and other materials in vaccines[,]' " *id.* at 9 (quoting *Geppert,* No. 00–0286V (Fed.Cl.Spec.Mstr. Mar. 21, 2001)); however, any statutory ambiguity regarding the proper venue for petitioners' claim is irrelevant because the Vaccine Act's statute of limitations had run by the time petitioners filed their district court suit. Petitioners did not debate where to file their claim and ultimately choose, as a result of statutory ambiguity, the wrong venue prior to the passage of thirty-six months from the date of Andrew's speech delay diagnosis. Rather, they filed suit well after the limitations period had run. It is difficult to see how confusion about where to file a claim could factor into a choice of venue decision when one venue already was closed.

Furthermore, petitioners did not file suit until after the passage of thirty-six months from Andrew's August 25, 1998 autism diagnosis. While petitioners argue that they did not recognize until 2001 that Andrew's injuries might have been caused by childhood vaccines and that they therefore might have a right to redress, *see* Pet'rs' Br. filed Sept. 6, 2012, at 17, respondent correctly points out

that *Cloer* addressed that issue, holding that equitable tolling is unavailable to a claimant on the basis of a post-statute of limitations recognition of the possibility of a causal link between vaccinations and her injuries, *see* Resp't's Br. filed Oct. 9, 2012, at 14–15; *see also Cloer,* 654 F.3d at 1344–45. In light of petitioners' failure to seek recourse prior to the running of the Vaccine Act's statute of limitations, either from the date of Andrew's first symptoms or from the date of his autism diagnosis, this court cannot find that petitioners pursued their claim diligently.

■ Petitioners also have not demonstrated that an extraordinary circumstance prevented them from pursuing their claim. The district court's December 16, 2002 dismissal of petitioners' suit, which petitioners cite as the obstacle to pursuing their claim, cannot have had any bearing on petitioners' failure to file a claim, in any venue, prior to November 9, 1998, which is the date marking thirty-six months after Andrew's speech-delay diagnosis. Thus, petitioners failed to present showings before the special master both that they pursued their rights diligently and that an extraordinary circumstance prevented them from pursuing their rights. Accordingly, the special master correctly found and concluded that equitable tolling is unwarranted.

## II. *Unconstitutional taking without due process of law*

Because the court's decision on petitioners' motion for review based on equitable tolling does not foreclose petitioners' other arguments, the court turns to the constitutional issue raised by petitioners. Petitioners argue that, because autism is a latent injury that may not be diagnosed until after thirty-six months from the first manifestation of symptoms, the Vaccine Act's statute of limitations, as construed in *Cloer,* deprives them of their property right in their tort action without due process of law. Pet'rs' Br. filed Sept. 6, 2012, at 14. Petitioners state that "a child suffering from autism allegedly caused by childhood vaccines[ ] may manifest the first sign or symptom of autism early on, but may not be diagnosed until

years later and, therefore, not know that his injury could have been caused by vaccines until he or she is so diagnosed." *Id.*

■ Whatever may be the merits of petitioners' argument that the latent nature of autism renders unconstitutional a statute of limitations that runs from the date of the first manifestation of symptoms, the court need not reach that question. Petitioners' concern is that a child's parents or guardian could not know that the child had suffered an injury as a result of vaccines until the child has received a diagnosis, *see id.* a concern echoed by the dissenting opinion in *Cloer*, *see* 654 F.3d at 1352–53 (Dyk, J., dissenting). As discussed above, however, petitioners did not file suit until more than thirty-six months had passed after Andrew's autism diagnosis. Even under petitioners' constitutional theory, then, they have not suffered a taking without due process.[4]

## CONCLUSION

Accordingly, based upon the foregoing, the decision of the special master is sustained and the Clerk of the Court shall enter judgment for respondent in accordance with the decision of the special master.

**IT IS SO ORDERED.**

No costs on review.

---

4. Petitioners do appear to suggest that the fact that the statute of limitations does not run from the date of the recognition that vaccines might have caused injuries also might raise constitutional questions. *See* Pet'rs' Br. filed Sept. 6, 2012, at 14 (arguing that statute of limitations works a deprivation of constitutional rights of those who "were not diagnosed with autism *and/or did not discover the cause of their autism* until after the Vaccine Act's 36[-]month statute [of] limitations had expired" (emphasis added)). This argument is grounded in what petitioners characterize as the latent nature of autism, in that early symptoms may not necessarily be ascribed to autism. *See id.* at 14–15. While the latent nature of autism might prevent a claimant's guardians from recognizing his autistic condition, such latency has no bearing on the ability to recognize the cause of an injury once diagnosed.